Jeffrey B. Isaacs (SBN 117104)
Jerome H. Friedberg (SBN 125663)
William Wargo (SBN 189987)
**ISAACS | FRIEDBERG LLP**
555 South Flower Street, Suite 4250
Los Angeles, California 90071
Phone:      (213) 929-5550
Facsimile:   (213) 955-5794
Email:      *jisaacs@ifcounsel.com*
            *jfriedberg@ifcounsel.com*
            *wwargo@ifcounsel.com*

*Attorneys for Plaintiffs Jack Doe and Jill Doe*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JACK DOE AND JILL DOE,**<br><br>Plaintiffs,<br><br>vs.<br><br>**UNITED STATES OF AMERICA;**<br>**TRACY L. WILKISON,**<br> in her official capacity only;<br>**KRISTI KOONS JOHNSON**,<br> in her official and individual capacities;<br>**JUSTIN PALMERTON,**<br> in his individual capacity only;<br>**KATHRYN E. BAILEY DRESS,**<br> in her individual capacity only;<br>**DEZMOND BEVERLY,**<br> in his individual capacity only;<br>**JESSIE MURRAY,**<br> in her individual capacity only; and<br>**DOE UNIDENTIFIED FEDERAL LAW ENFORCEMENT AGENTS 1-10**,<br> in their individual capacities,<br><br>Defendants. | Case No. 2:21-cv-05695<br><br>**COMPLAINT FOR:**<br><br>**(1) RETURN OF PROPERTY PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 41(g);**<br><br>**(2) DAMAGES PURSUANT TO *BIVENS V. SIX UNKNOWN NAMED AGENTS OF THE FEDERAL BUREAU OF NARCOTICS*, 403 U.S. 388 (1971);**<br><br>**(3) DECLARATORY RELIEF; AND**<br><br>**(4) ORDER REQUIRING DISCLOSURE OF SUPPORTING AFFIDAVIT AND INVENTORY.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Jack Doe and Jill Doe allege as follows:

**INTRODUCTION**

1.     Plaintiffs bring this action pseudonymously as Jack Doe and Jill Doe against Defendants United States of America ("**United States**"); Acting United States Attorney for the Central District of California, Tracy L. Wilkison ("**Wilkison**"), in her official capacity only; Assistant Director in Charge of the Los Angeles Field Office of the Federal Bureau of Investigation ("**FBI**"), Kristi Koons Johnson ("**Koons Johnson**"), in her official and individual capacities; FBI Special Agent Justin Palmerton ("**Palmerton**"), in his individual capacity; FBI Special Agent Kathryn E. Baily Dress ("**Bailey Dress**"), in her individual capacity; Federal Law Enforcement Agent Dezmond Beverly ("**Beverly**"), in his individual capacity; FBI Supervisory Special Agent Jessie Murray ("**Murray**"), in her individual capacity; and DOE Unidentified Federal Law Enforcement Agents 1 through 10 ("**DOES 1-10**"), in their individual capacities (collectively, "**Defendants**" or the "**government**").

2.     Plaintiffs seek redress for the government's unlawful and unconstitutional seizure, search and retention of Plaintiffs' property in violation of Plaintiffs' Fourth and Fifth Amendment rights.

3.     Plaintiffs stored valuable personal property in safe deposit Box No. 703 and Box No. 4100 that they leased at U.S. Private Vaults, Inc. ("**USPV**") in Beverly Hills, California, none of which is contraband or otherwise connected to criminal activity.

4.     As described more fully below, on or about March 22, 2021, Defendants unlawfully seized, broke open and then searched Plaintiffs' safe deposit boxes and their contents, in violation of Plaintiffs' Fourth Amendment rights. Thereafter, Defendants unlawfully deprived Plaintiffs of the use, benefit and enjoyment of their property, and are continuing to deprive them of the use, benefit and enjoyment of their property, in violation of their Fourth and Fifth Amendment

2

**COMPLAINT**

rights, including, but not limited to, by conditioning the return of the contents of their safe deposit boxes on them disclosing their identities to the government, so that the government can criminally investigate them, in violation of their Fifth Amendment rights to due process and against self-incrimination, and by failing to provide sufficient notice of the factual and legal grounds on which the government purports to continue to detain their property.

## JURISDICTION, AUTHORITY AND VENUE.

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. section 1331, which declares that, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," and pursuant to Article III of the United States Constitution, in that the United States is a party to this action and the action involves questions of federal constitutional and statutory law.

6.     This Court has the authority to order Defendants to return Plaintiffs' personal property pursuant to Federal Rule of Criminal Procedure 41(g) ("**Rule 41(g)**"), even in the absence of a criminal proceeding, as it was the subject of an unlawful seizure, an unlawful search and an otherwise unlawful deprivation of property.  *See Ramsden v. United States*, 2 F.3d 322, 324 (9th Cir. 1993); *United States v. Martinson*, 809 F.2d 1364, 1366-67 (9th Cir. 1987).

7.     This Court has the inherent equitable power to order the return of Plaintiffs' personal property separate and apart from Rule 41(g).  *See Otonye v. United States*, 903 F. Supp. 357, 360 (E.D.N.Y. 1995).

8.     This Court has the authority to award damages against the law enforcement agents who engaged in the unlawful seizure and search of Plaintiffs' property, and continuing deprivation of their property rights without due process of law, pursuant to the United States Supreme Court's decision in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("***Bivens***"), and its progeny.

493618.1

9. This Court has the authority to grant the declaratory relief sought herein pursuant to the Declaratory Judgment Act, 28 U.S.C. section 2201, which provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration," and section 2202, and Federal Rule of Civil Procedure 57.

10. This Court has the authority to order the government to disclose to Plaintiffs' counsel a copy of the supporting affidavit for the warrant by which Plaintiffs' property was purportedly seized and any so-called inventory of the contents of their safe deposit boxes, pursuant to Federal Rule of Criminal Procedure 41(f) ("**Rule 41(f)**") and the Court's inherent authority to order the unsealing of a supporting affidavit. *See In re Searches and Seizures*, 2008 WL 5411772, at *3 (E.D. Cal. Dec. 19, 2008) (collecting cases).

11. Venue is proper in this district pursuant to 28 U.S.C. sections 1391(b)(1), (2) and (3) and (e)(1) because Defendants include officers and employees of the United States and its agencies, and, on information and belief, they reside in this district; because a substantial part of the events and/or omissions giving rise to the claims alleged herein occurred in this district; and because a substantial part of the property that is the subject of this action is situated in this district.

## **RELATED CASES.**

12. This case is related to the following civil cases pending in this district before United States District Judge Gary R. Klausner:

(a) *John Doe v. United States of America, et al.*, Case No. 2:21-cv-02803, filed on March 31, 2021 ("**Case No. 02803**");

(b) *Richard Roe v. United States of America, et al.*, Case No. 2:21-cv-02919, filed on April 5, 2021;

(c) *Michael Moe v. United States of America, et al.*,

4

**COMPLAINT**

Case No. 2:21-cv-02990, filed on April 6, 2021;

      (d)    *Charles Coe v. United States of America, et al.*,
Case No. 2:21-cv-03019, filed on April 7, 2021;

      (e)    *DOES 1-6 v. United States of America, at al.*,
Case No. 2:21-cv-03254, filed on April 15, 2021 ("**Case No. 03254**");

      (f)    *Mitchell Magee v. United States of America, et al.*,
Case No. 2:21-cv-03298, filed on April 16, 2021;

      (g)    *Louis Loe v. United States of America, et al.*,
Case No. 2:21-cv-03348, filed on April 19, 2021;

      (h)    *Search and Seizure of Box No. 8309 at U.S. Private Vaults v. United States of America*, Case No. 2:21-cv-03554, filed on April 26, 2021 ("**Case No. 03554**");

      (i)    *John Joe v. United States of America, et al.*,
Case No. 2:21-cv-04366, filed on May 25, 2021; and

      (j)    *Paul Snitko et al. v. United States of America, et al.*,
Case No. 2:21-cv-04405, filed on May 27, 2021 ("**Case No. 04405**").

13.    This case is related to the above civil cases pursuant to Local Rule 83-1.3, in that: (a) they all arise from the same or closely related transactions, happenings and events; (b) they all call for the determination of the same or substantially related or similar questions of law and fact; and (c) because they all name the United States as a defendant and seek some of the same relief, they would entail substantial duplication of effort if heard by different judges.

14.    A Notice of Related Case is being filed concurrently herewith.

## PARTIES.

**A.**    **Plaintiffs.**

15.    Plaintiffs Jack Doe and Jill Doe are, and at all relevant times were, individuals over the age of 18 and residing in Orange County, California.

16.    Defendants have publicly stated that "USPV was a criminal business";

1    that it "conspired with its criminal clients to distribute drugs, launder money, and

2    structure transactions to avoid currency reporting requirements"; that these were

3    "among [the] other offenses" USPV and its clients committed; and that "the

4    majority of box holders are criminals . . . ."  Defendants have also expressly stated

5    their intention to criminally investigate any USPV box holder whose identity they

6    can determine, and, on information and belief, are currently actively conducting

7    such investigations.

8          17.    Plaintiffs are business people who make their livings conducting

9    business in Southern California.  Because of the government's statements about

10   USPV box holders, such as that the "majority of [USPV] box holders are criminals,"

11   Plaintiffs would be subject to significant injury, harassment, ridicule and personal

12   embarrassment if their names were publicly disclosed as USPV box holders.

13         18.    Plaintiffs therefore bring this action pseudonymously, to protect

14   themselves from the risk of unfounded criminal investigation and prosecution

15   arising from the government's unlawful seizure and search of their property, and

16   from injury, harassment, embarrassment and retaliation based merely on the fact that

17   they are USPV box holders.  *See Does I-XXII v. Advanced Textile Corp.*, 214 F.3d

18   1058, 1067-68 (9th Cir. 2000) ("In this circuit, we allow parties to use pseudonyms

19   in the 'unusual case' which nondisclosure of the party's identity 'is necessary . . . to

20   protect a person from harassment, injury, ridicule or personal embarrassment.'")

21   (quoting *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981)).

22         19.    Furthermore, the government is aware of Plaintiffs' identities, as a

23   result of the administrative forfeiture proceeding described below.

24   **B.    Defendants.**

25         20.    Defendant United States of America is, and at all relevant times was,

26   the United States, its departments, agencies and entities, including those responsible

27   for the Fourth and Fifth Amendment violations alleged in this action.

28         21.    Defendant Wilkison is, and at all relevant times was, the Acting

United States Attorney for the Central District of California (the "**U.S. Attorney**"). The U.S. Attorney has authority over all policies and practices of the United States Attorney's Office for the Central District of California ("**USAO**"), and all actions taken by Assistant United States Attorneys for the Central District of California. Defendant Wilkison is sued in her official capacity only.

22. Defendant Koons Johnson is, and at all relevant times was, the Assistant Director in Charge of the FBI's Los Angeles Field Office (the "**Assistant Director**"). The Assistant Director has authority over the policies and procedures implemented by, and the actions of, FBI agents assigned to the Los Angeles Field Office. Defendant Koons Johnson is sued in her official and individual capacities. The search and seizure of USPV was a large-scale operation, involving dozens of FBI and other federal law enforcement agents. On information and belief, such a significant mobilization of federal law enforcement agents, including FBI agents, in the Los Angeles metropolitan area could only have occurred with Koons Johnson's knowing participation in the development and execution, and/or approval or ratification, of the operational plan for the seizure of the USPV safe deposit boxes, including the decision to seize and break open all of the USPV boxes, and rifle through their contents, despite the complete absence of probable cause to do so.

23. Defendant Palmerton is, and at all relevant times was, a Special Agent of the FBI in, and acting at the direction of, the FBI's Los Angeles Field Office. Defendant Palmerton is sued in his individual capacity. In Case No. 03254, Defendant Palmerton submitted a Declaration, dated April 16, 2021, stating that, "I personally participated in the inventorying of the contents of the safety deposit boxes at U.S. Private Vaults."

24. Defendant Bailey Dress is, and at all relevant times was, a Special Agent of the FBI in, and acting at the direction of, the FBI's Los Angeles Field Office. Defendant Baily Dress is sued in her individual capacity. In Case No. 02803, Defendant Baily Dress submitted a Declaration, dated April 2, 2021,

**COMPLAINT**

stating that, "I personally participated in the inventorying of the contents of the safety deposit boxes at U.S. Private Vaults."

25. Defendant Beverly is, and at all relevant times was, a Federal Law Enforcement Agent, based in the Los Angeles metropolitan area, and acting at the direction of the FBI's Los Angeles Field Office. Defendant Beverly is sued in his individual capacity. Defendant Beverly personally participated in the inventorying of the contents of the safety deposit boxes at USPV.

26. Defendant Jessie Murray is, and at relevant times was, a Supervisory Special Agent of the FBI in, and acting at the direction of, the FBI's Los Angeles Field Office. Defendant Murry is sued in her individual capacity. Defendant Murray has personally participated in the continued detention of Plaintiffs' property by the government.

27. Plaintiffs are unaware of the true names and capacities of those Defendants sued as DOES 1-10, and therefore sues those Defendants using their fictitious names. On information and belief, each such Defendant is a federal law enforcement agent who supervised, participated in, or otherwise aided and assisted the unlawful seizure and search of Plaintiffs' safe deposit boxes and the government's continued deprivation of their contents, and is jointly and severally responsible and liable for the damage and harm caused Plaintiffs. Plaintiffs will amend this pleading to allege the true names and capacities of DOES 1-10 when they have been ascertained.

## STATEMENT OF FACTS.

A.    **U.S. Private Vaults, Inc.**

28. USPV has operated a facility offering private safe deposit boxes for rent to the public at 9182 West Olympic Boulevard in Beverly Hills for the past decade. There is nothing secretive or inherently illegal about the business: USPV was a member of the Beverly Hills Chamber of Commerce; and it advertised by prominent store front signage and on-line through a website that provided detailed

information about the services it offered, including videos of customers accessing their safe deposit boxes.  *See* https://www.usprivatevaults.com.

29.    USPV housed several hundred safe deposit boxes of varying sizes, each secured by its own key.  The safe deposit boxes were physically grouped into separate clusters of connected individual safe deposit boxes called "nests."  USPV leased these boxes to the public under yearly leases and provided security and insurance for their contents.  Many of USPV's customers live in the vicinity and used its services because it was conveniently located, and/or because local banks did not have safe deposit boxes available for lease.

30.    Notably, USPV did not keep a key to any rented box, which meant that the only person with the ability to open the box was the box holder or his or her authorized designee.  *See* https://www.usprivatevaults.com/uspv-vs-bank-safe-deposit-box.

31.    According to USPV's website:

- USPV had been operating in Beverly Hills since 2011.
- USPV provided several advantages that were unavailable with bank safety deposit boxes:
  o All USPV boxes were insured; banks do not offer insurance for their boxes.
  o USPV did not hold keys to their clients' boxes; banks do keep a key.
  o USPV was not subject to federal banking rules that could mandate "bank holidays" or a suspension of withdrawals in case of an economic crisis.
  o Accessing a box at USPV took much less time than at a bank, advertising "In & out access in 5 minutes."
  o USPV boxes were not subject to probate lock out upon the death of the box owner.

9

**COMPLAINT**

1       o     USPV offered a wider selection of box sizes than do

2            banks.

3      •     Security at USPV was handled by ADT (a publicly traded

4         security company with over $5 billion in revenue, which operates

5         "the largest network of security professionals in the United

6         States").

7 https://investor.adt.com/press-releases/press-release-details/2021/ADT-Reports-

8 Fourth-Quarter-and-Full-Year-2020-Results/default.aspx.

9 **B.**    **Plaintiffs are USPV Box Holders.**

10      32.     Plaintiffs leased safe deposit Box No. 703 and Box No. 4100 at USPV.

11 Plaintiffs possesses the only two keys to each box and have maintained control over

12 the boxes since commencement of the leases.

13      33.     Plaintiffs are current on their lease payments. They have an

14 expectation of privacy in the interiors of the boxes and their contents.

15      34.     Plaintiffs leased the boxes at USPV for the sake of convenience,

16 security and peace of mind. Neither Plaintiff is an owner, officer, director, manager,

17 supervisor, employee, or representative of USPV, and neither is associated with or a

18 customer of the Gold Business that is co-located with or adjacent to USPV. Neither

19 Plaintiff is aware of any criminal activity occurring at or connected to USPV, and

20 would not have leased a box, or continued to lease a box, at USPV if either had

21 become aware of any such activity.

22      35.     Plaintiffs' boxes contained currency, gold coins, a ring, watches and

23 important legal documents belonging to Plaintiffs. These items of property

24 represent Plaintiffs' savings, investments, valuable and cherished personal items and

25 essential documents; they are not contraband, or the proceeds or evidence of illegal

26 activity.

27      36.     Plaintiffs' property was in their safe deposit boxes when the

28 government seized control of USPV and all of the other safe deposit boxes at USPV

**COMPLAINT**

493618.1

1    on or about March 22, 2021.  Plaintiffs have been unable to enter the USPV facility

2    or access their boxes and their contents since the commencement of the

3    government's search on the morning of March 22, 2021.

4    **C.    The Government Seizes and Searches All USPV Safe Deposit Boxes and**

5    **Their Contents, Including Plaintiffs'.**

6         37.    On or about March 9, 2021, the USAO sought and obtained a sealed

7    indictment of USPV.  The indictment did not name any individual defendants and

8    did not contain any specific allegations of wrongdoing by USPV's customers.

9         38.    Beginning early in the morning on Monday, March 22, 2021, agents of

10   the United States, including DOES 1-10, executed a seizure warrant (the "seizure

11   warrant") at USPV.

12        39.    The seizure warrant stated that, "[t]he items to be seized are the

13   following pieces of business equipment," including "the nests of safety deposit

14   boxes and keys," without any limit or reference to particular safe deposit boxes or

15   descriptions of particular nests.

16        40.    The seizure warrant further stated that:

17            ***This warrant does not authorize a criminal search or seizure***

18            ***of the contents of the safety deposit boxes***.  In seizing the

19            nests of boxes, agents shall follow their written inventory

20            policies to protect their agencies and the contents of the boxes.

21            Also in accordance with their written policies, agents shall

22            inspect the contents of the boxes in an effort to identify their

23            owners in order to notify them so that they can claim their

24            property.  (emphasis added.)

25        41.    The government has only unsealed and publicly disclosed a select and

26   very small portion of the affidavit purportedly filed in support of issuance of the

27   seizure warrant.

28        42.    The portion of the affidavit unsealed by the government provides as

11

**COMPLAINT**

1    follows:

2             The warrants authorize the seizure of the nests of the boxes

3             themselves, <u>not</u> their contents.  By seizing the nests of safety

4             deposit boxes, the government will necessarily end up with

5             custody of what is inside those boxes initially.  Agents will

6             follow their written inventory policies to protect their agencies

7             from claims of theft or damage to the content of the boxes, and

8             to ensure that no hazardous items are unknowingly stored in a

9             dangerous manner.

10   43.   The portion of the affidavit unsealed additionally provided that:

11           Agents will attempt to notify the lawful owners of the property

12           stored in the boxes how to claim their property, such as by

13           posting that information on the internet or at USPV itself, or

14           by contacting the owners directly.  In order to notify the

15           owners directly, agents will, in accordance with their policies

16           regarding an unknown person's property, look for contract

17           information or something which identifies the owner, (USPV

18           recommends that box renters include their or their designees'

19           telephone numbers on a note in a box in the event that UPSV

20           removes the contents for nonpayment of rental fees.)

21   44.   In a footnote, the affidavit limited the extent of any inventory search:

22           The FBI policy regarding taking custody of an unknown

23           person's property provides, in part, that agents "inspect the

24           property as necessary to identify the owner and preserve the

25           property for safe keeping."   The inspection "***should extend no***

26           ***further than necessary to determine ownership***."  (emphasis

27           added).

28   //

44.     In executing the seizure warrant, the agents closed the parking lot and the USPV facility to the public and to box holders.  *See* "Federal Investigation Takes Over Beverly Hills Strip Mall," *Beverly Hills Courier* (Mar. 25, 2021), available at https://beverlyhillscourier.com/2021/03/25/federal-investigation-takes-over-beverly-hills-strip-mall/ ("The strip mall at the intersection of West Olympic Boulevard and South Palm Drive is hardly something to gawk at—upscale by strip mall standards, but still a strip mall.  But since March 22, dozens of local and federal agents have taken over the lot.").

45.     Once the government had seized USPV, its agents, including Defendants Palmerton, Baily Dress, Beverly and DOES 1-10, proceeded to break into every safe deposit box at the facility, including Plaintiffs' boxes, and emptied each box of its contents.  They rifled through the contents of these boxes and inspected all the contents of the boxes.  They continued these inspections for each box even after they discovered information sufficient to identify the box holder.

46.     In addition, on information and belief, the government deliberately disabled the biometric data reader, through which box holders gained access to the vault area in which their safe deposit boxes were located, so that Plaintiffs and other box holders could not later anonymously establish their ownership of the contents of their boxes.

47.     The search of the USPV safe deposit boxes, including that of Plaintiffs, was not an inventory search.  If the government had been conducting a lawful inventory search to prevent loss and avoid accusations of theft, there would have been no reason to forcibly open USPV's locked safe deposit boxes that were otherwise impervious to tampering.

48.     On Tuesday, March 23, 2021, when the agents were still present at USPV, counsel for the box holder in Case No. 02803 visited the site and attempted to speak with an agent to learn whether there was a warrant for his clients' safe deposit boxes, and, if so, to obtain a copy of the warrant pursuant to the Federal

**COMPLAINT**

1   Rules of Criminal Procedure.  A police officer guarding the perimeter carried
2   counsel's message inside to the agents and returned with a message that no agents
3   would come out to speak with counsel, but that counsel could call a telephone
4   number that the agents provided.  The number provided was the FBI's general
5   Los Angeles number.  Counsel left a voicemail message at that number, but his call
6   was never returned.

7      49.    Counsel subsequently learned that Assistant United States Attorney
8   ("**AUSA**") Andrew Brown was handling the matter.  That same day, another
9   attorney for the box holder in Case No. 02803 contacted AUSA Brown to attempt
10  (a) to determine whether his clients' safe deposit boxes had been searched; (b) to
11  determine whether his clients' property had been seized; and (c) in the event either
12  had occurred, to obtain a copy of the warrant pursuant to the Federal Rules.

13     50.    During the ensuing conversation, AUSA Brown told the attorney the
14  following:

15          •    The government is seizing all safe deposit boxes at the site, even
16               though the boxes are separately leased by numerous unknown
17               individuals;

18          •    The government will inspect and inventory the contents of every
19               box and use that information to try to identify every box's
20               owner(s);

21          •    The government will not read the contents of notebooks or
22               thumb drives that they find in the boxes;

23          •    A search and seizure warrant was served on the owners or
24               management of USPV, but AUSA Brown declined to disclose
25               either the names of the persons served or their counsel;

26          •    The government will not provide the seizure warrant to a USPV
27               box holder unless and until the box holder identifies himself or
28               herself to the government;

14
**COMPLAINT**

- If a box holder identifies himself or herself, the government will commence an investigation of the holder to determine whether he or she came by the contents of his or her box legally, and the box holder will be required to establish his or her claim to lawful ownership of the property contained in the box; and

- The government assumes that all USPV box holders are engaged in illegal activity, even though the government does not know the identity of the box holders or the contents of their boxes.

51. Accordingly, as confirmed by AUSA Brown, it was the government's plan all along to subject every USPV box holder to criminal investigation by doing the following:

(a) Each safe deposit box holder would be required to disclose his or her identity to the government to make a claim for the return of the contents of their box.

(b) Once provided with the box holder's identity, the government would conduct a criminal investigation into that person based upon AUSA Brown's belief that anybody who utilized the safe deposit boxes at USPV was a criminal engaged in felonious activity.

(c) The government would also refuse to return property found in a safe deposit box to its owner unless the box holder explained to the government how they had obtained that property and could prove to the government that it was not related to criminal activity.

**D.      The Government's Phony Claims Process.**

52. As of March 26, 2021, the USPV location was closed and a sign – a true and correct depiction of which is pictured below – was affixed to the front door directing safe deposit box holders to use the web link *forms.fbi.gov/uspvclaims* to "initiate a claim for your US Private Vaults box":

//

15
**COMPLAINT**

1
2
3
4
5
6
7
8
9
10



11      53.    The form located at forms.fbi.gov/uspvclaims – a true and correct
12  depiction of which is pictured below – stated: "To make a claim for property stored
13  at U.S. Private Vaults in Beverly Hills, California, please provide the following
14  information.  An FBI agent will contact you for additional details."  The form
15  required the box holder to enter his or her first name, last name and contact number
16  for submission:

17
18
19
20
21
22
23
24
25
26
27



28

**COMPLAINT**

493618.1

54. The form also required the person submitting it to acknowledge that, "it is a federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning the facts on this form as applicable under the provisions of Title 18, United States Code, Section 1001, et seq."

55. On information and belief, the government's website and form were nothing more than a subterfuge for obtaining the identities and contact information of USPV box holders, in furtherance of the government's plan to criminally investigate all USPV box holders, as confirmed by the following facts, among others:

(a) The form did not ask, or even allow, a box holder to list his or her box number, and thus it could not possibly aid the government in returning the contents of particular safe deposit boxes to their owners;

(b) Government representatives have admitted to persons who have completed and submitted forms that the FBI had no established or standardized policies, procedures, or process for returning the contents of safe deposit boxes to their owners; and

(c) Since at the time the government had not initiated forfeiture proceedings against the contents of the vast majority of safe deposit boxes, including Plaintiffs', there was no legal basis for requiring box holders to submit "claims" to obtain return of their property.

56. On information and belief, attorneys representing several different USPV box holders have proposed to AUSA Brown that he use a special master or a government staffed filter team to return property seized from the safe deposit boxes at USPV, to allow the government to return property to box holders without them having to reveal their identities to investigators or prosecutors. AUSA Brown rejected these proposals out of hand.

**E.    The Government's Public Statements and Admissions.**

57. In an April 2, 2021 public filing in Case No. 02803, the USAO made

the following relevant statements, among others, concerning the seizure and search of the USPV safe deposit boxes, which necessarily included Plaintiffs' boxes:

(a)     "USPV was a criminal business that conspired with its criminal clients to distribute drugs, launder money, and structure transactions to avoid currency reporting requirements, among other offenses."

(b)     "[T]he majority of box holders are criminals . . . ."

(c)     "The government obtained a sealed criminal seizure warrant for, among other things, the nests of safety deposit boxes located at USPV."

(d)     "During the week of March 22 through 26, federal agents executed the seizure warrant and removed the contents of safety deposit boxes, inventorying their contents in the process . . . ."

(e)     "The inventory was completed on site."

(f)     "Agents left USPV on March 26, 2021."

(g)     "[A]ll the inventory searches were completed by March 26, 2021."

58.     In an April 16, 2021 public filing in Case No. 03254, the USAO made the following additional statements, among others, concerning the seizure and search of the USPV safe deposit boxes, which necessarily included Plaintiffs' boxes:

(a)     "[F]ar from using anonymity to protect the powerless . . . plaintiffs hope to use it to protect rich criminals from the consequences of their crimes, and to keep their ill-gotten gains."

(b)     "The government seized the nests of safety deposit boxes because there was overwhelming evidence that USPV was a criminal enterprise that conspired with its criminal clients to distribute drugs, launder money, and structure transactions to avoid currency reporting requirements, among other offenses."

(c)     "[T]he majority of the box holders are criminals who used USPV's anonymity to hide their ill-gotten wealth … ."

59.     These statements confirm that, at least in Plaintiffs' case, the

1   government had no probable cause to seize, search and retain the contents of

2   Plaintiffs' safe deposit boxes, and did so based only on the entirely false and

3   fictitious assumption that Plaintiffs were criminals engaged in felonious criminal

4   activity merely because they leased safe deposit boxes at USPV.

5   **F.      The Government's Unconstitutional and Invalid Administrative**

6   **Forfeiture Proceedings.**

7       60.     On or about May 20, 2021, the FBI initiated an administrative

8   forfeiture proceeding (the "**AFP**") by issuing a "Notice of Seizure of Property and

9   Initiation of Administrative Forfeiture Proceedings," which attached a list of assets

10  seized from USPV safe deposit boxes that the government sought to forfeit

11  (together, the "**FBI Notice**").

12      61.     On or about May 20, 2021, the FBI also sent individualized notices of

13  the AFP to certain USPV box holders the government had identified from

14  documents contained in those box holders' safety deposit boxes.

15      62.     Plaintiffs were among the hundreds of USPV box holders who received

16  individualized notices for the contents their USPV boxes from the FBI (the

17  "**Individualized Notices**").

18      63.     The Individualized Notices Plaintiffs received sought to forfeit some,

19  but not all, of Plaintiffs' property stored in their USPV boxes.

20      64.     The Individualized Notices stated no "facts" for why the property

21  sought to be forfeited was the subject of the AFP, stating only: "The asset(s)

22  referenced in this notice letter were seized on March 22, 2021 by the FBI at U.S.

23  Private Vaults in Beverly Hills, California."

24      65.     As "Forfeiture Authority" for the AFP, the Individualized Notices

25  stated only that, "[t]he forfeiture of this property has been initiated pursuant to 18

26  USC 981(a)(1)(C) and the following additional federal laws: 19 U.S.C. §§ 1602-

27  1619, 18 U.S.C. § 983 and 28 C.F.R. Parts 8 and 9."

28      66.     The Individualized Notices state that, "**TO CONTEST THE**

19

**COMPLAINT**

**FORFEITURE OF THIS PROPERTY IN UNITED STATES DISTRICT COURT YOU MUST FILE A CLAIM**."  According to the Individualized Notices, the "claim should be filed online or by mailing it via the U.S. Postal Service or a Commercial Delivery Service to the FBI."  Pursuant to the Individualized Notices, if a "claim" was not filed by June 24 or June 25, 2021 (depending on when the Individual Notice had been sent), it "may result in the property being forfeited to the United States."

67.     On or about June 9, 2021, in Case No. 03254, the Court entered an order (the ("**June 9, 2021 Order**") holding that:

> The Government cites no federal statute, regulation, or procedural rule that requires claimants in an administrative forfeiture proceeding to identify themselves by their legal names, nor is the Court aware of any such legal authority.

68.     Notwithstanding this ruling, the government has publicly asserted that to be considered valid, any claim contesting the AFP must be filed under the claimant's "true name."  By way of example, in a filing in Case No. 03254, the government stated that under its interpretation of the "Code of Federal Regulations," no claimant is "permitted to proceed anonymously"; instead, all claimants "must identify themselves" by using their "true names" when making a claim.

69.     On or about June 21, 2021, Plaintiffs filed Declarations and Claims (the "**Declarations**") with the FBI to avoid having the government declaring their property forfeited without further process.  In their Declarations, both Plaintiffs made clear that they were providing their true names under government compulsion, stating:

> I am only using my true name (instead of a pseudonym) and identifying my USPV box number and its contents because the government has publicly declared that if I do not, it will deem my claim defective and proceed to forfeit my property without

20

**COMPLAINT**

1  further process.

2  **G.    The Court's Finding and Rulings that the Government's Forfeiture**

3  **Process is Unconstitutional.**

4  70.    In Case No. 04405, the plaintiffs were all USPV box holders whose

5  property was subject to the AFP.  They moved for a temporary restraining order

6  ("**TRO**") enjoining the "government from forfeiting property based on notices that

7  do not identify the factual and legal basis for the forfeiture."

8  71.    On or about June 22, 2021, the Court granted the plaintiffs' application

9  for a TRO in that case (the "**June 22, 2021 Order**").  The Court concluded that the

10  FBI Notice, and individualized notices of forfeiture the government had sent to

11  certain USPV box holders, are deficient and unconstitutional as violating the

12  claimants' right to due process of law.

13  72.    In particular, the Court ruled that:

14  •    "[Under *Gete v. I.N.S.*, 121 F.3d 1285, 1297 (9th Cir.

15  1997), and as affirmed in *Al Haramain Islamic Found., Inc.*

16  *v. U.S. Dep't of Treasury*, 686 F.3d 965 (9th Cir. 2012), in a

17  forfeiture proceeding,] 'the Due Process Clause required the

18  [government] to disclose the factual bases for seizure[]' and

19  'the specific statutory provision allegedly violated.'"

20  •    "Here, the FBI Notice and the individualized notices

21  comply with neither of the Due Process requirements set

22  forth in *Gete* and affirmed in *Al Haramain*."

23  •    "With respect to the factual basis for the seizure of

24  Plaintiffs' property from USPV, the individualized notices

25  state: 'The asset(s) referenced in this notice letter were

26  seized on March 22, 2021 by the FBI at U.S. Private Vaults

27  in Beverly Hills, California[.]' . . .  This notice, put bluntly,

28  provides no factual basis for the seizure of Plaintiffs'

21

**COMPLAINT**

1        property whatsoever."

2        &bull;   "The notices fare little better as to *Gete*'s second Due

3        Process requirement. In *Gete*, the court held that to satisfy

4        the Due Process rights of known property owners in the

5        forfeiture context, the Government must provide 'notice of

6        the specific statutory provision' that supports the

7        Government's forfeiture proceeding," [such that here]

8        "[t]the notices . . . fall woefully short of the Government's

9        duty to provide the 'specific statutory provision allegedly

10       violated.'"

11      &bull;   "This forfeiture, if conducted in a manner that violates the

12       Due Process clause, would by definition deprive Plaintiffs

13       of their constitutional right to due process of law" [and]

14       "[t]hus, at this juncture Plaintiff has carried its burden as to

15       the likelihood of irreparable harm [arising from the

16       government's inadequate notices]."

17     73.    On or about June 25, 2021, Plaintiffs sent to the government by FedEx

18  and U.S. Mail, a "Demand for Immediate Return of Property" (the "**Demand**").

19  The Demand notified the government of the June 22, 2021 Order, and requested that

20  the government immediately return Plaintiffs' property because, for the reasons

21  stated in the June 22, 2021 Order, the FBI's continued retention of Plaintiffs'

22  property was (and is) without cause and a violation of their due process rights.

23     74.    Thus far, the government has not responded to either Plaintiffs'

24  Declarations or Demand.

25  **H.   Plaintiffs Are Suffering Ongoing Harm.**

26     75.    Notwithstanding their filing of the Declarations and the issuance of the

27  June 22, 2021 Order, Plaintiffs' property that they stored in their safe deposit boxes

28  remains in the government's custody and control, and Plaintiffs continue to be

**COMPLAINT**

deprived of any use, benefit, enjoyment, or access to that property.  Meanwhile, Plaintiffs have no means to recover possession of that property because the government has no established and standardized policies, procedures, or processes for promptly returning Plaintiffs' property to them, and instead has commenced an unconstitutional, unlawful and invalid AFP against their property to further unlawfully delay return of their property.

## GOVERNING LEGAL PRINCIPLES

### A.    Relevant Search and Seizure Law.

76.    The Fourth Amendment to the United States Constitution provides that, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const., amend IV.

### 1.    *The Probable Cause Requirement.*

77.    The confiscation, detention, inspection and/or cataloguing of the contents of a safe deposit box containing private property is a search and seizure for purposes of the Fourth Amendment.  *See, e.g., United States v. Chadwick*, 433 U.S. 1, 11 (1977) ("By placing personal effects inside a double-locked footlocker, respondents manifested an expectation that the contents would remain free from public examination."), *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565 (1991); *United States v. Spilotro*, 800 F.2d 959, 962 (9th Cir. 1986) ("We begin by noting that there is no question that defendant Blasko has standing to challenge the search of his home, person, and safe deposit box."); *United States v. Wetselaar*, 2013 WL 8206582, *10 (D. Nev. Dec. 31, 2013) ("[A]s renters of those boxes, Defendants had a reasonable expectation of privacy in the contents, which include the space inside the box and the inner metal liner itself.").

78.    The Supreme Court has made clear that a warrant must describe the

23
**COMPLAINT**

1  places to be searched and the items to be seized with particularity and supported by

2  probable cause specific to those places and items:

> 3  The Warrant Clause of the Fourth Amendment categorically
>
> 4  prohibits the issuance of any warrant except one "particularly
>
> 5  describing the place to be searched and the persons or things
>
> 6  to be seized."  The manifest purpose of this particularity
>
> 7  requirement was to prevent general searches.  By limiting the
>
> 8  authorization to search to the specific areas and things for
>
> 9  which there is probable cause to search, the requirement
>
> 10  ensures that the search will be carefully tailored to its
>
> 11  justifications, and will not take on the character of the
>
> 12  wide-ranging exploratory searches the Framers intended to
>
> 13  prohibit.  Thus, the scope of a lawful search is "defined by the
>
> 14  object of the search and the places in which there is probable
>
> 15  cause to believe that it may be found.  Just as probable cause
>
> 16  to believe that a stolen lawnmower may be found in a garage
>
> 17  will not support a warrant to search an upstairs bedroom,
>
> 18  probable cause to believe that undocumented aliens are being
>
> 19  transported in a van will not justify a warrantless search of a
>
> 20  suitcase."

21  *Maryland v. Garrison*, 480 U.S. 79, 84 (1987) (quoting *United States v. Ross*,

22  456 U.S. 798, 824 (1982)); *accord United States v. SDI Future Health, Inc.,* 568

23  F.3d 684, 702-703 (9th Cir. 2009) ("A warrant must not only give clear instructions

24  to a search team, it must also give legal, that is, not overbroad, instructions.  Under

25  the Fourth Amendment, this means that there [must] be probable cause to seize the

26  particular thing[s] named in the warrant.  [P]robable cause means a fair probability

27  that contraband or evidence of a crime will be found in a particular place, based on

28  the totality of circumstances.") (citations and quotation marks omitted).

24

**COMPLAINT**

79.   Consequently, the search of a place or the seizure of an item pursuant to an overbroad warrant for which there is no specific probable cause is invalid.  *See United States v. Know,* 58 F.3d 423, 427 (9th Cir. 1995) ("The warrant authorized the seizure of virtually every document and computer file at HK Video . . . . [T]he warrant contained no limitations on which documents within each category could be seized or suggested how they related to specific criminal activity.  By failing to describe with any particularity the items to be seized, the warrant is indistinguishable from the general warrants repeatedly held by this court to be unconstitutional.").

80.   Moreover, probable cause in the warrant context requires more than "mere suspicion" that the place to be searched or the item to be seized is connected to criminal activity; it requires an "evidentiary nexus" to the alleged criminal activity.  *United States v. Wanless*, 882 F.2d 1459, 1466 (9th Cir. 1989) ("Even if the evidence here would . . . justify the . . . suspicion that there were illegal substances . . . [m]ere suspicion does not rise to the level of probable cause.") (internal quotations omitted); *United States v. Schultz*, 14 F.3d 1093, 1097-98 (6th Cir. 1994) ("While an officer's 'training and experience' may be considered in determining probable cause, it cannot substitute for the lack of evidentiary nexus . . . between the safe deposit boxes and any criminal activity.  Officer Ideker did not have anything more than a guess that contraband or evidence of a crime would be found in the boxes, and therefore the . . . warrant should not have been issued.").

## 2.   *The Government Cannot Deliberately or Recklessly Mislead the Issuing Magistrate Judge.*

81.   It is also well established that a warrant based upon deliberately or recklessly false or misleading information material to the issue of probable cause is invalid, in whole or in part.  As the Supreme Court has decreed:

> [W]hen the Fourth Amendment demands a factual showing
> sufficient to comprise "probable cause," the obvious

25

**COMPLAINT**

493618.1

assumption is that there will be a *truthful showing*.  This does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily.  But surely it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true.  It is established law, that a warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter.  If an informant's tip is the source of information, the affidavit must recite some of the underlying circumstances from which the informant concluded that relevant evidence might be discovered, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, . . . was "credible" or his information "reliable."  Because it is the magistrate who must determine independently whether there is probable cause, it would be an unthinkable imposition upon his authority if a warrant affidavit, revealed after the fact to contain a deliberately or reckless false statement, were to stand beyond impeachment."

*Franks v. Delaware*, 438 U.S. 154, 164-65 (1984) (citations and internal quotations omitted, emphasis in original); *see also United States v. Perkins*, 850 F.3d 1109, 1123 (9th Cir. 2017) ("We hold that the district court clearly erred in finding that Agent Ensley did not omit relevant information with at least a reckless disregard for whether the omissions would render the warrant application misleading.  Had the

**COMPLAINT**

1   omitted information been included, the application would not have supported

2   probable cause.  We, therefore, reverse the district court's denial of the motion to

3   suppress evidence obtained pursuant to the search warrant, and vacate Perkins'

4   conviction.").

5         82.    The "good faith" exception to a legally insufficient search or seizure

6   warrant, recognized by the Supreme Court in *United States v. Leon*, 468 U.S. 897

7   (1984), does not apply where the warrant is "so lacking in indicia of probable cause

8   as to render official belief in its existence entirely unreasonable."  *Id.* at 923; *see*

9   *also United States. v. Underwood*, 725 F.3d 1076, 1085-86 (9th Cir. 2013) ("An

10  affidavit is so lacking in indicia of probable cause, or bare bones, when it fails to

11  provide a colorable argument for probable cause.  A colorable argument is made

12  when 'thoughtful and competent judges' could disagree that probable cause does not

13  exist.  Here . . . the affidavit submitted . . . in support of the state search warrant . . .

14  was so deficient as to render official belief in its existence entirely unreasonable.")

15  (citations omitted).

16        ***3.    Inventory Versus Investigatory Searches.***

17        83.    The Supreme Court has held that, "the opening of containers found

18  during inventory searches is based on the principle that an inventory search must not

19  be a ruse for a general rummaging in order to discover incriminating evidence"; that

20  "inventory searches should be designed to produce an inventory"; and that

21  "individual police officer[s] must not be allowed so much latitude that inventory

22  searches are turned into a purposeful and general means of discovering evidence of

23  crime."  *Florida v. Wells*, 495 U.S. 1, 4-5 (1990) (internal quotations omitted).

24        84.    For an inventory search to be valid, it must be required by and

25  conducted in accordance with established and standardized policies and procedures.

26  *See United States v. Bulacan,* 156 F.3d 963, 970 (9th Cir. 1998) ("discretion when

27  conducting an inventory" must be "exercised according to standard criteria and on

28  the basis of something other than suspicion of evidence of criminal activity")

1    (quoting *Wells*, 495 U.S. at 3-4); *United States v. Johnson*, 936 F.2d 1082, 1084 (9th

2    Cir. 1991) ("[A]n inventory search is unconstitutional unless it is conducted both (a)

3    pursuant to an established inventory-search policy . . . and (b) in accordance with

4    the official procedures of the relevant [law enforcement agency]".).

5         85.    The purpose of an inventory search, according to the Supreme Court,

6    must be limited to "the protection of the owner's property while it remains in police

7    custody; the protection of the police against claims or disputes over lost or stolen

8    property; and the protection of the police from potential danger." *South Dakota v.*

9    *Opperman*, 428 U.S. 364, 368 (1976) (citations omitted).

10        86.    Thus, "[a]n inventory search will not be sustained where the court

11   believed that the officers were searching for incriminating evidence of other

12   offenses." *United States v. Feldman*, 788 F.2d 544, 553 (9th Cir. 1986); *see also*

13   *United States v. Johnson*, 889 F.3d 1120, 1125 (9th Cir. 2018) (holding that

14   inventory searches "must be non-investigative").

15        87.    In the course of an inventory search, government agents are not

16   permitted to read written documents, as they may contain information that goes well

17   beyond the allowed limited scope of an inventory search. *See United States v.*

18   *Khoury*, 901 F.2d 948, 959 (11th Cir. 1990) (reading diary during inventory search

19   was a Fourth Amendment violation; the government agent was only allowed to flip

20   through the diary to see if any separate document or object was stuck between its

21   pages); *see also United States v. Santos*, 961 F. Supp. 71, 73–74 (S.D.N.Y.1997)

22   (finding that reading all written material among defendant's possessions during

23   inventory search was an "affirmative, investigatory act" in violation of the Fourth

24   Amendment).

25   **B.**    **Relevant Fifth Amendment Due Process Principles.**

26        88.    The Due Process Clause of the Fifth Amendment to the United States

27   Constitution provides that, "[n]o person shall be . . . deprived of life, liberty, or

28   property, without due process of law." U.S. Const., amend. V.

89.     The government's continued retention of seized property – even if initially lawful – raises the issue of procedural due process.  *See Case v. Eslinger*, 555 F.3d 1317, 1330 (11th Cir. 2009) ("A complaint of continued retention of legally seized property raises an issue of procedural due process. . ."); *see also Al Haramain Islamic Foundation*, 686 F.3d at 980 ("[T]he Constitution does require that the government take reasonable measures to ensure basic fairness to the private party and that the government follow procedures reasonably designed to protect against erroneous deprivation of the private party's interests."); *Lewis v. City of Culver City*, 2018 WL 1406609, *2 (C.D. Cal. Mar. 19, 2018) ("[T]he continued retention of legally seized property would raise an issue of procedural due process . . . ."); *Lena Sutton* v. *Leesburg, Alabama,* 2021 WL 1264244, *13 (N.D. Ala. Apr. 6, 2021) ("[T]he continued retention of legally seized property. . . raises an issue of procedural due process.").

90.     Procedural due process includes the right to "sufficient notice concerning the factual and legal bases for [deprivation of property rights]."  *Gete*, 121 F.3d at 1297.  Thus, where the government has seized property, it must provide notice of "the exact reasons for the seizure, as well as the particular statutory provisions and regulations" at issue.  *Id*. at 1297.

91.     It is a matter of well established constitutional jurisprudence that the government may not require a person to waive his Fifth Amendment privilege against self-incrimination in order to vindicate his Fourth Amendment right against unreasonable searches and seizures.  *See Simmons v. United States*, 390 U.S. 377, 394 (1968) (where defendant "was obliged either to give up what he believed, with advice of counsel, a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment against self-incrimination," Court found "it intolerable that one constitutional right should have to be surrendered in order to assert another"); *Bittaker v. Woodford*, 331 F.3d 715, 724 (9th Cir. 2003) ("The scope of required disclosure should not be so broad as to effectively eliminate any incentive to

29
**COMPLAINT**

1   vindicate [one's] constitutional right[s]."); *Gates v. City of Chicago*, 623 F.3d 389,

2   441 (7th Cir. 2010) ("[T]he City[s]. . . .procedure improperly places on the arrestee

3   the burden of proof to establish that he had a lawful right to the property. . . .  [S]uch

4   a burden [improperly] impos[es] a criminal sanction in the absence of criminal

5   conduct.").

6   **C.**    ***Bivens.***

7        92.    In *Bivens v. Six Unknown Named Agents of the Federal Bureau of*

8   *Narcotics*, 403 U.S. 388 (1971), the Supreme Court held that, "violation of [the

9   Fourth Amendment's] command by a federal agent acting under color of his

10  authority gives rise to a cause of action for damages consequent upon his

11  unconstitutional conduct," *id*. at 389, and that a plaintiff "is entitled to recover

12  money damages for any injuries he has suffered as a result of the agent's violation

13  of the Amendment."  *Id.* at 397; *see also Boule v. Egbert*, 980 F.3d 1309, 1315

14  (9th Cir. 2020) (Plaintiffs' "Fourth Amendment claim . . . is a permissible area for

15  *Bivens* claims," and thus "may proceed as a *Bivens* damages claim.")

16       93.    In *Bivens*, the plaintiff alleged that federal agents had engaged in an

17  unreasonable search of his apartment.  403 U.S. 389-90.  In holding that the plaintiff

18  could bring a damages action against the federal agents who engaged in the

19  unreasonable search, the Supreme Court held that:

20              [T]he Fourth Amendment operates as a limitation upon the

21              exercise of federal power . . . . [I]t guarantees to citizens of the

22              United States the absolute right to be free from unreasonable

23              searches and seizures carried out by virtue of federal authority.

24              And where federally protect rights have been invaded it has

25              been the rule from the beginning that courts will be alert to

26              adjust their remedies so as to grant the necessary relief.

27  *Bivens*, 403 U.S. at 392 (internal quotation omitted).

28       94.    Furthermore, the Supreme Court has long held that punitive damages

**COMPLAINT**

may be awarded in a *Bivens* action. *See Carlson v. Green*, 446 U.S. 14, 22 (1980) ("Punitive damages are 'a particular remedial mechanism normally available in the federal courts,' and are especially appropriate to redress the violation by a government official of a citizen's constitutional rights.") (citation omitted).

## DEFENDANTS UNLAWFULLY SEIZED, SEARCHED AND DEPRIVED PLAINTIFFS OF THEIR PROPERTY

95. Defendants' seizure and search of Plaintiffs' safe deposit boxes and continued detention of their property was (and is) unconstitutional and unlawful in the following respects, among others.

96. *First*, the seizure warrant for Plaintiffs' boxes was invalid because Defendants lacked any probable cause that the contents of the boxes was contraband or otherwise connected to criminal activity. That Defendants lacked probable cause is manifest on the face of the seizure warrant, which expressly stated, "[t]his warrant does not authorize a criminal search or seizure of the contents of the safety deposit boxes." It is also evident from the unsealed portion of the supporting affidavit, which expressly stated that, "[t]he warrants authorize seizure of the nest of boxes themselves, <u>not</u> their contents." (emphasis in original).

97. *Second*, on information and belief, Defendants knowingly or recklessly made materially false and misleading statements to the Magistrate Judge who issued the seizure warrant by either falsely stating that the government had probable cause to believe that Plaintiffs' boxes, or the nest of safe deposit boxes in which Plaintiffs' boxes were included, contained contraband or was otherwise connected to criminal activity, or by omitting to forthrightly advise the Magistrate Judge that the government lacked such probable cause as to Plaintiffs' boxes or as to the nests of boxes in which Plaintiffs' boxes were included.

98. *Third*, Defendants cannot avail themselves of the good faith exception to a facially deficient seizure warrant because the warrant was so lacking in indicia of probable cause with respect to Plaintiffs' boxes and their contents as to render

31
**COMPLAINT**

official belief in the existence of such probable cause entirely unreasonable.  Indeed, the warrant expressly states that it does not authorize the search or seizure of any box, including Plaintiffs' boxes, for purposes of criminal investigation.

99.    *Fourth,* Defendants acted unreasonably in breaking open Plaintiffs' boxes because they lacked probable cause that the contents of the boxes were contraband or otherwise connected to criminal activity, and by breaking them open, Defendants needlessly subjected its contents to theft and government tampering.

100.    *Fifth,* Defendants' purported "inventory search" of Plaintiffs' boxes was unlawful because their seizure of the boxes and their contents was invalid in the first place, as entirely lacking in probable cause.

101.    *Sixth,* Defendants' purported "inventory search" of Plaintiffs' boxes was also unlawful as it was, in fact, a pretext for conducting an investigatory search, the true purpose of which was to further Defendants' indiscriminate criminal investigation of USPV box holders.

102.    *Seventh,* Defendants' purported "inventory search" of Plaintiffs' boxes was also unlawful because it was not required by or conducted pursuant to established and standardized agency policies and procedures.  If the government had been conducting a proper inventory search—intended to prevent loss and accusations of theft—there would have been no reason to forcibly open USPV's locked safe deposit boxes that were otherwise impervious to tampering.

103.    *Eighth,* since Defendants completed inventorying the contents of Plaintiffs' boxes on or about March 22, 2021, Defendants have deprived Plaintiffs of the use, benefit and enjoyment of their property without due process by failing to promptly establish and implement a legitimate process for the immediate return of their property.

104.    *Ninth,* Defendants' AFP is unconstitutional and invalid because the government has failed to provide Plaintiffs adequate notice of the factual basis and legal grounds on which it seeks to forfeit Plaintiffs' property.

32
**COMPLAINT**

105. *Tenth*, Defendants impermissibly conditioned the return of Plaintiffs' property on Plaintiffs subjecting themselves to criminal investigation, in violation of their privilege against self-incrimination, and impermissibly compelled Plaintiffs to disclose their true names in the AFP by threatening to deem their claims invalid and declare their property forfeited without further process if they did not.

## FIRST CAUSE OF ACTION

### (For Return of Property Pursuant to 41(g))

### (Against Defendants United States, Wilkinson and Koons Johnson)

106. Plaintiffs repeat and reallege paragraphs 1 through 105 of this Complaint as if fully alleged herein.

107. Federal Rule of Criminal Procedure 41(g) provides that, "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return . . . ."

108. Plaintiffs are each a "person aggrieved" within the meaning of Rule 41(g) because, as described more fully above:

(a) Defendants unlawfully seized their safe deposit boxes at USPV and their contents, in violation of their Fourth Amendment rights;

(b) Defendants unlawfully searched those boxes and their contents, in further violation of their Fourth Amendment rights; and

(c) Defendants have unlawfully continued to detain their property without cause and have deprived them of the use, benefit and enjoyment of that property, in violation of their Fifth Amendment due process rights.

109. Because Defendants' conduct as described herein constituted an unlawful seizure of Plaintiffs' safe deposit boxes and their contents, an unlawful search of their boxes and their contents and an unlawful deprivation of Plaintiffs' property without due process, Plaintiffs are entitled to the return of their property under Rule 41(g).

//

493618.1

**SECOND CAUSE OF ACTION**

**(For Damages Pursuant to *Bivens, 403 U.S. 388 (1971)*)**

**(Against Koons Johnson, Palmerton, Baily Dress,**

**Beverly, Murray and DOES 1-10 individually)**

110.    Plaintiffs repeat and reallege paragraphs 1 through 109 of this Complaint as if fully alleged herein.

111.    Under the Fourth Amendment, Plaintiffs' safe deposit boxes and their contents may not be seized and searched without probable cause.

112.    Under the Fifth Amendment, Plaintiffs may not be deprived of the use, benefit and enjoyment of their property without due process of law.

113.    The government has improperly concealed and withheld information about the seizure and search of Plaintiffs' safety deposit boxes at USPV to, among other reasons, obscure, conceal and coverup the culpability of federal agents, including Defendants Koons Johnson, Palmerton, Baily Dress, Beverly, Murray and DOES 1-10, for the violations of Plaintiffs' Fourth and Fifth Amendment rights.  By way of example only, Defendants have refused to unseal all but a small portion of the affidavit filed in support of the seizure warrant, and failed to produce any inventories of Plaintiffs' property, including any video recordings showing government agents inventorying the contents of Plaintiffs' boxes.

114.    Defendants Koons Johnson, Palmerton, Bailey Dress, Beverly and DOES 1-10, as agents of the United States acting under color of authority, violated Plaintiffs' Fourth Amendment rights by seizing their safe deposit boxes and their contents without probable cause.

115.    Defendants Koons Johnson, Palmerton, Bailey Dress, Beverly and DOES 1-10, as agents of the United States acting under color of authority, further violated Plaintiffs' Fourth Amendment rights by searching their safe deposit boxes without probable cause.

116.    Defendants Koons Johnson, Palmerton, Bailey Dress, Beverly, Murray

34

**COMPLAINT**

and DOES 1-10, as agents of the United States acting under color of authority, also violated Plaintiffs' Fifth Amendment rights by depriving Plaintiffs of the use, benefit and enjoyment of the property they were storing in their safe deposit boxes without due process of law.

117.   Because the conduct of Defendants Koons Johnson, Palmerton, Bailey Dress, Beverly, Murray and DOES 1-10 as described herein constituted an unlawful seizure of Plaintiffs' safe deposit boxes and their contents, an unlawful search of their boxes and their contents, and an unlawful deprivation of Plaintiffs' property without due process, Plaintiffs are entitled to damages under *Bivens*, 403 U.S. 388 (1971), and its progeny, including, but not limited to, exemplary and punitive damages.

## THIRD CAUSE OF ACTION

### (Declaratory Relief)

### (Against All Defendants)

118.   Plaintiffs repeat and reallege paragraphs 1 through 117 of this Complaint as if fully alleged herein.

119.   As described above, Plaintiffs contend that Defendants have unlawfully seized their property in violation of the Fourth Amendment; have unlawfully searched their property in violation of the Fourth Amendment; and are unlawfully depriving them of the use, benefit and enjoyment of their property without due process in violation of the Fifth Amendment.

120.   Defendants contend that their seizure, search and continued and indefinite detention of Plaintiffs' property is reasonable and lawful, and therefore Plaintiffs are not entitled to relief.

121.   Accordingly, a judicial declaration is necessary and appropriate at this time and under these circumstances, so that Plaintiffs may ascertain their rights to regain possession of their personal property that Defendants have seized and are continuing to detain, and to do so without having to subject themselves to criminal

investigation.

## FOURTH CAUSE OF ACTION

### (For Order Disclosing Supporting Affidavit and Inventory

### Pursuant to Rule 41(f) and the Court's Inherent Power)

### (Against Defendants United States, Wilkison and Koons Johnson)

122.   Plaintiffs repeat and reallege paragraphs 1 through 121 of this Complaint as if fully alleged herein.

123.   Federal Rule of Criminal Procedure 41(f)(1)(C) provides, in relevant part, that, "[t]he officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises the property was taken . . . ."

124.   Federal Rule of Criminal Procedure 41(f)(1)(D) provides, in relevant part, that, "[t]he judge must, on request, give a copy of the inventory to the person from whom, or from whose premises, the property was taken and to the applicant for the warrant."

125.   Additionally, the Court has the inherent power to order the government to provide Plaintiffs with an unsealed copy of the affidavit submitted by the government in support of its warrant application.

126.   The government has taken property from Plaintiffs, namely, their safe deposit boxes at USPV and the contents of those safe deposit boxes.  The government, however, has not provided Plaintiffs with the inventory of their property that was the product of Defendants' purported inventory search of Plaintiffs' safe deposit boxes.  Accordingly, pursuant to Rule 41(f), Plaintiffs are entitled to receive any inventories of their property conducted and/or prepared by the government, including, without limitation, any video-recordings of Defendants inventorying the contents of Plaintiffs' boxes.

127.   Further, the government has deliberately only unsealed a small portion of the affidavit it filed in support of the seizure warrant in order to justify its conduct

36

**COMPLAINT**

1  in seizing Plaintiffs' and others' USPV safe deposit boxes, while simultaneously

2  obscuring, concealing and covering up the true nature and full scope of its unlawful

3  and unconstitutional actions.  Accordingly, Defendants should be ordered to provide

4  Plaintiffs' counsel with a copy of any inventory of Plaintiffs' property, and the

5  entire, unsealed supporting affidavit.

6  **PRAYER FOR RELIEF**

7  Plaintiffs pray for judgment against Defendants as follows:

8  A.    For an order requiring Defendants to immediately return all property

9  seized from Plaintiffs' Box No. 703 and Box No. 4100 at USPV.

10  B.    For damages against Defendants Koons Johnson, Palmerton, Bailey

11  Dress, Beverly, Murray and DOES 1-10, individually, in an amount to be

12  determined at trial, but at least for the value of the property taken.

13  C.    For exemplary and punitive damages against Defendants

14  Koons Johnson, Palmerton, Bailey Dress, Beverly, Murray and DOES 1-10,

15  individually.

16  D.    For a declaration that Defendants' conduct as described in this

17  Complaint has violated Plaintiffs' rights under the Fourth and Fifth Amendments to

18  the United States Constitution.

19  E.    For an order requiring Defendants to immediately provide Plaintiffs'

20  counsel with a copy of any inventory of Plaintiffs' property and the entire, unsealed

21  supporting affidavit.

22  F.    For costs and reasonable attorney's fees pursuant to 28 U.S.C. § 2412.

23  //

24  //

25  //

26  //

27  //

28  //

37

**COMPLAINT**

493618.1

G.     For such other and further relief as the Court deems just and proper.

DATED: July 14, 2021                    **ISAACS | FRIEDBERG LLP**

_____

Jeffrey B. Isaacs, Esq.
Jerome H. Friedberg, Esq.
William A. Wargo, Esq.

*Attorneys for Plaintiffs Jack Doe and Jill Doe*

38
**COMPLAINT**

493618.1

## **DEMAND FOR JURY TRIAL**

Plaintiffs Jack Doe and Jill Doe hereby demand a jury trial on all issues properly triable to a jury pursuant to Federal Rule of Civil Procedure 38.

DATED:  July 14, 2021                          **ISAACS | FRIEDBERG LLP**

_____

Jeffrey B. Isaacs, Esq.
Jerome H. Friedberg, Esq.
William A. Wargo, Esq.

*Attorneys for Plaintiffs Jack Doe and Jill Doe*

**COMPLAINT**

493618.1