# EXHIBIT A

Jeffrey B. Isaacs (SBN 117104)
Jerome H. Friedberg (SBN 125663)
William Wargo (SBN 189987)
**ISAACS | FRIEDBERG LLP**
555 South Flower Street, Suite 4250
Los Angeles, California 90071
Phone:     (213) 929-5550
Facsimile:   (213) 955-5794
Email:     *jisaacs@ifcounsel.com*
              *jfriedberg@ifcounsel.com*
              *wwargo@ifcounsel.com*

*Attorneys for Plaintiffs Jack Doe and Jill Doe*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JACK DOE AND JILL DOE,** | Case No. 2:21-cv-05695-RGK-MAR |
| Plaintiffs, | Hon. R. Gary Klausner<br>Magistrate Judge Margo A. Rocconi |
| vs. | **FIRST AMENDED COMPLAINT FOR:** |
| **UNITED STATES OF AMERICA;**<br>**TRACY L. WILKISON,**<br>    in her official capacity only;<br>**KRISTI KOONS JOHNSON,**<br>    in her official and individual capacities;<br>**JUSTIN PALMERTON,**<br>    in his individual capacity only;<br>**KATHRYN E. BAILEY DRESS,**<br>    in her individual capacity only;<br>**DEZMOND BEVERLY,**<br>    in his individual capacity only;<br>**JESSIE MURRAY,**<br>    in her individual capacity only;<br>**LYNNE K. ZELLHART,**<br>    in her individual capacity only<br>    and | **(1) RETURN OF PROPERTY PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 41(g);**<br><br>**(2) DAMAGES PURSUANT TO** *BIVENS V. SIX UNKNOWN NAMED AGENTS OF THE FEDERAL BUREAU OF NARCOTICS***, 403 U.S. 388 (1971);**<br><br>**(3) DECLARATORY RELIEF;**<br><br>**(4) ORDER REQUIRING DISCLOSURE OF INVENTORY; AND** |

**FIRST AMENDED COMPLAINT**

493618.1

**DOE UNIDENTIFIED FEDERAL LAW ENFORCEMENT AGENTS 1-10,**

in their individual capacities,

Defendants.

**(5) ORDER REQUIRNG DESTRUCTION OF RECORDS**

**DEMAND FOR JURY TRIAL**

2

**FIRST AMENDED COMPLAINT**

493618.1

1    Plaintiffs Jack Doe and Jill Doe allege as follows:

2    **INTRODUCTION**

3    1.    Plaintiffs bring this action pseudonymously as Jack Doe and Jill Doe

4    against Defendants United States of America ("**United States**"); Acting

5    United States Attorney for the Central District of California, Tracy L. Wilkison

6    ("**Wilkison**"), in her official capacity only; Assistant Director in Charge of the

7    Los Angeles Field Office of the Federal Bureau of Investigation ("**FBI**"),

8    Kristi Koons Johnson ("**Koons Johnson**"), in her official and individual capacities;

9    FBI Special Agent Justin Palmerton ("**Palmerton**"), in his individual capacity; FBI

10    Special Agent Kathryn E. Baily Dress ("**Bailey Dress**"), in her individual capacity;

11    Federal Law Enforcement Agent Dezmond Beverly ("**Beverly**"), in his individual

12    capacity; FBI Supervisory Special Agent Jessie Murray ("**Murray**"), in her

13    individual capacity; FBI Special Agent Lynne K. Zellhart ("**Zellhart**"), in her

14    individual capacity; and DOE Unidentified Federal Law Enforcement Agents 1

15    through 10 ("**DOES 1-10**"), in their individual capacities (collectively,

16    "**Defendants**" or the "**government**").

17    2.    Plaintiffs seek redress for the government's unlawful and

18    unconstitutional seizure, search and retention of Plaintiffs' property in violation of

19    Plaintiffs' Fourth and Fifth Amendment rights.

20    3.    Plaintiffs stored valuable personal property in safe deposit Box No. 703

21    and Box No. 4100 that they leased at U.S. Private Vaults, Inc. ("**USPV**") in

22    Beverly Hills, California, none of which is contraband or otherwise connected to

23    criminal activity.

24    4.    As described more fully below, on or about March 22, 2021,

25    Defendants unlawfully seized, broke open and then searched Plaintiffs' safe deposit

26    boxes and their contents, in violation of Plaintiffs' Fourth Amendment rights.

27    Thereafter, Defendants unlawfully deprived Plaintiffs of the use, benefit and

28    enjoyment of their property, and are continuing to deprive them of the use, benefit

3

**FIRST AMENDED COMPLAINT**

and enjoyment of their property, in violation of their Fourth and Fifth Amendment rights.

## JURISDICTION, AUTHORITY AND VENUE.

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. section 1331, which declares that, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," and pursuant to Article III of the United States Constitution, in that the United States is a party to this action and the action involves questions of federal constitutional and statutory law.

6.      This Court has the authority to order Defendants to return Plaintiffs' personal property pursuant to Federal Rule of Criminal Procedure 41(g) ("**Rule 41(g)**"), even in the absence of a criminal proceeding, as it was the subject of an unlawful seizure, an unlawful search and an otherwise unlawful deprivation of property. *See Ramsden v. United States*, 2 F.3d 322, 324 (9th Cir. 1993); *United States v. Martinson*, 809 F.2d 1364, 1366-67 (9th Cir. 1987).

7.      This Court has the inherent equitable power to order the return of Plaintiffs' personal property separate and apart from Rule 41(g). *See Otonye v. United States*, 903 F. Supp. 357, 360 (E.D.N.Y. 1995).

8.      This Court has the authority to award damages against the law enforcement agents who engaged in the unlawful seizure and search of Plaintiffs' property, and continuing deprivation of their property rights without due process of law, pursuant to the United States Supreme Court's decision in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("***Bivens***"), and its progeny.

9.      This Court has the authority to grant the declaratory relief sought herein pursuant to the Declaratory Judgment Act, 28 U.S.C. section 2201, which provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and

4

**FIRST AMENDED COMPLAINT**

other legal relations of any interested party seeking such declaration," and section 2202, and Federal Rule of Civil Procedure 57.

10.     This Court has the authority to order the government to disclose to Plaintiffs' counsel any so-called inventory of the contents of their safe deposit boxes, pursuant to Federal Rule of Criminal Procedure 41(f) ("**Rule 41(f)**").

11.     This Court has the authority, pursuant to *United States v. Comprehensive Drug Testing, Inc.*, 621 F.2d 1162 (9th Cir. 2010) (*en banc*), to order the government to destroy any documents, records or files that the government created or complied and that were derived, directly or indirectly, from its unlawful seizure, search and/or retention of Plaintiffs' personal property stored at USPV, including, but not limited to, any documents, records, or files concerning any criminal investigation of Plaintiffs the government conducted arising from or related to the unlawful seizure, search and retention of Plaintiffs' personal property.

12.     Venue is proper in this district pursuant to 28 U.S.C. sections 1391(b)(1), (2) and (3) and (e)(1) because Defendants include officers and employees of the United States and its agencies, and, on information and belief, they reside in this district; because a substantial part of the events and/or omissions giving rise to the claims alleged herein occurred in this district; and because a substantial part of the property that is the subject of this action is situated in this district.

## **RELATED CASES.**

13.     This case is related to a number of civil cases pending in this district before United States District Judge Gary R. Klausner, including, but not necessarily limited to:

(a)     *John Doe v. United States of America, et al.*, Case No. 2:21-cv-02803, filed on March 31, 2021 ("**Case No. 02803**");

(b)     *Richard Roe v. United States of America, et al.*, Case No. 2:21-cv-02919, filed on April 5, 2021;

5

**FIRST AMENDED COMPLAINT**

1    (c)    *Michael Moe v. United States of America, et al.*,

2  Case No. 2:21-cv-02990, filed on April 6, 2021;

3    (d)    *Charles Coe v. United States of America, et al.*,

4  Case No. 2:21-cv-03019, filed on April 7, 2021;

5    (e)    *DOES 1-6 v. United States of America, at al.*,

6  Case No. 2:21-cv-03254, filed on April 15, 2021 ("**Case No. 03254**");

7    (f)    *Mitchell Magee v. United States of America, et al.*,

8  Case No. 2:21-cv-03298, filed on April 16, 2021;

9    (g)    *Louis Loe v. United States of America, et al.*,

10  Case No. 2:21-cv-03348, filed on April 19, 2021;

11    (h)    *Search and Seizure of Box No. 8309 at U.S. Private Vaults v.*

12  *United States of America*, Case No. 2:21-cv-03554, filed on April 26, 2021

13  ("**Case No. 03554**"); and

14    (i)    *Paul Snitko et al. v. United States of America, et al.*,

15  Case No. 2:21-cv-04405, filed on May 27, 2021 ("**Case No. 04405**").

16    14.    This case is related to the above civil cases pursuant to Local

17  Rule 83-1.3, in that: (a) they all arise from the same or closely related transactions,

18  happenings and events; (b) they all call for the determination of the same or

19  substantially related or similar questions of law and fact; and (c) because they all

20  name the United States as a defendant and seek some of the same relief, they would

21  entail substantial duplication of effort if heard by different judges.

**PARTIES.**

**A.    Plaintiffs.**

24    15.    Plaintiffs Jack Doe and Jill Doe are, and at all relevant times were,

25  individuals over the age of 18 and residing in Orange County, California.

26    16.    Defendants have publicly stated that "USPV was a criminal business";

27  that it "conspired with its criminal clients to distribute drugs, launder money, and

28  structure transactions to avoid currency reporting requirements"; that these were

6

**FIRST AMENDED COMPLAINT**

"among [the] other offenses" USPV and its clients committed; and that "the majority of box holders are criminals . . . ."  Defendants have also expressly stated their intention to criminally investigate any USPV box holder whose identity they can determine, and, on information and belief, are currently actively conducting such investigations.

17.     Plaintiffs are business people who make their livings conducting business in Southern California.  Because of the government's statements about USPV box holders, such as that the "majority of [USPV] box holders are criminals," Plaintiffs would be subject to significant injury, harassment, ridicule and personal embarrassment if their names were publicly disclosed as USPV box holders.

18.     Plaintiffs therefore bring this action pseudonymously, to protect themselves from the risk of unfounded criminal investigation and prosecution arising from the government's unlawful seizure and search of their property, and from injury, harassment, embarrassment and retaliation based merely on the fact that they are USPV box holders.  *See Does I-XXII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067-68 (9th Cir. 2000) ("In this circuit, we allow parties to use pseudonyms in the 'unusual case' which nondisclosure of the party's identity 'is necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment.'") (quoting *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981)).

19.     Furthermore, the government is aware of Plaintiffs' identities, as a result of the administrative forfeiture proceeding described below.

**B.     Defendants.**

20.     Defendant United States of America is, and at all relevant times was, the United States, its departments, agencies and entities, including those responsible for the Fourth and Fifth Amendment violations alleged in this action.

21.     Defendant Wilkison is, and at all relevant times was, the Acting United States Attorney for the Central District of California (the "**U.S. Attorney**"). The U.S. Attorney has authority over all policies and practices of the United States

**FIRST AMENDED COMPLAINT**

1  Attorney's Office for the Central District of California ("**USAO**"), and all actions

2  taken by Assistant United States Attorneys for the Central District of California.

3  Defendant Wilkison is sued in her official capacity only.

4  22.   Defendant Koons Johnson is, and at all relevant times was, the

5  Assistant Director in Charge of the FBI's Los Angeles Field Office (the "**Assistant**

6  **Director**").  The Assistant Director has authority over the policies and procedures

7  implemented by, and the actions of, FBI agents assigned to the Los Angeles Field

8  Office.  Defendant Koons Johnson is sued in her official and individual capacities.

9  The search and seizure of USPV was a large-scale operation, involving dozens of

10  FBI and other federal law enforcement agents.  On information and belief, such a

11  significant mobilization of federal law enforcement agents, including FBI agents, in

12  the Los Angeles metropolitan area could only have occurred with Koons Johnson's

13  knowing participation in the development and execution, and/or approval or

14  ratification, of the operational plan for the seizure of the USPV safe deposit boxes,

15  including the decision to seize and break open all of the USPV boxes, and rifle

16  through their contents, despite the complete absence of probable cause to do so.

17  23.   Defendant Palmerton is, and at all relevant times was, a Special Agent

18  of the FBI in, and acting at the direction of, the FBI's Los Angeles Field Office.

19  Defendant Palmerton is sued in his individual capacity.  In Case No. 03254,

20  Defendant Palmerton submitted a Declaration, dated April 16, 2021, stating that, "I

21  personally participated in the inventorying of the contents of the safety deposit

22  boxes at U.S. Private Vaults."

23  24.   Defendant Bailey Dress is, and at all relevant times was, a Special

24  Agent of the FBI in, and acting at the direction of, the FBI's Los Angeles Field

25  Office.  Defendant Baily Dress is sued in her individual capacity.  In Case

26  No. 02803, Defendant Baily Dress submitted a Declaration, dated April 2, 2021,

27  stating that, "I personally participated in the inventorying of the contents of the

28  safety deposit boxes at U.S. Private Vaults."

8

**FIRST AMENDED COMPLAINT**

1    25.    Defendant Beverly is, and at all relevant times was, a Federal Law

2    Enforcement Agent, based in the Los Angeles metropolitan area, and acting at the

3    direction of the FBI's Los Angeles Field Office.  Defendant Beverly is sued in his

4    individual capacity.  Defendant Beverly personally participated in the inventorying

5    of the contents of the safety deposit boxes at USPV.

6    26.    Defendant Jessie Murray is, and at relevant times was, a Supervisory

7    Special Agent of the FBI in, and acting at the direction of, the FBI's Los Angeles

8    Field Office.  Defendant Murry is sued in her individual capacity.  Defendant

9    Murray has personally participated in the continued detention of Plaintiffs' property

10   by the government.

11   27.    Defendant Zellhart is, and at relevant times was, a Special Agent of the

12   FBI in, and acting at the direction of, the FBI's Los Angeles Field Office.

13   Defendant Zellhart is sued in her individual capacity.  Defendant Zellhart signed an

14   affidavit under penalty of perjury that was submitted in support of the search and

15   seizure warrants for USPV (the "**Affidavit**").  The Affidavit was false and

16   misleading for the reasons discussed below.  Plaintiff is informed and believes that

17   all of these false and misleading statements were made by Defendant Zellhart

18   knowingly or with reckless disregard for their truth or falsity

19   28.    Plaintiffs are unaware of the true names and capacities of those

20   Defendants sued as DOES 1-10, and therefore sues those Defendants using their

21   fictitious names.  On information and belief, each such Defendant is a federal law

22   enforcement agent who supervised, participated in, or otherwise aided and assisted

23   the unlawful seizure and search of Plaintiffs' safe deposit boxes and the

24   government's continued deprivation of their contents, and is jointly and severally

25   responsible and liable for the damage and harm caused Plaintiffs.  Plaintiffs will

26   amend this pleading to allege the true names and capacities of DOES 1-10 when

27   they have been ascertained.

28   **STATEMENT OF FACTS.**

9

**FIRST AMENDED COMPLAINT**

**A.   U.S. Private Vaults, Inc.**

29.     USPV has operated a facility offering private safe deposit boxes for rent to the public at 9182 West Olympic Boulevard in Beverly Hills for the past decade.  There is nothing secretive or inherently illegal about the business: USPV was a member of the Beverly Hills Chamber of Commerce; and it advertised by prominent store front signage and on-line through a website that provided detailed information about the services it offered, including videos of customers accessing their safe deposit boxes.  *See* https://www.usprivatevaults.com.

30.     USPV housed several hundred safe deposit boxes of varying sizes, each secured by its own key.  The safe deposit boxes were physically grouped into separate clusters of connected individual safe deposit boxes called "nests."  USPV leased these boxes to the public under yearly leases and provided security and insurance for their contents.  Many of USPV's customers live in the vicinity and used its services because it was conveniently located, and/or because local banks did not have safe deposit boxes available for lease.

31.     Notably, USPV did not keep a key to any rented box, which meant that the only person with the ability to open the box was the box holder or his or her authorized designee.  *See* https://www.usprivatevaults.com/uspv-vs-bank-safe-deposit-box.

32.     According to USPV's website:

- USPV had been operating in Beverly Hills since 2011.
- USPV provided several advantages that were unavailable with bank safety deposit boxes:
  - All USPV boxes were insured; banks do not offer insurance for their boxes.
  - USPV did not hold keys to their clients' boxes; banks do keep a key.
  - USPV was not subject to federal banking rules that could

10

**FIRST AMENDED COMPLAINT**

mandate "bank holidays" or a suspension of withdrawals in case of an economic crisis.

o   Accessing a box at USPV took much less time than at a bank, advertising "In & out access in 5 minutes."

o   USPV boxes were not subject to probate lock out upon the death of the box owner.

o   USPV offered a wider selection of box sizes than do banks.

•   Security at USPV was handled by ADT (a publicly traded security company with over $5 billion in revenue, which operates "the largest network of security professionals in the United States").

https://investor.adt.com/press-releases/press-release-details/2021/ADT-Reports-Fourth-Quarter-and-Full-Year-2020-Results/default.aspx.

**B.   Plaintiffs are USPV Box Holders.**

33.   Plaintiffs leased safe deposit Box No. 703 and Box No. 4100 at USPV. Plaintiffs possesses the only two keys to each box and have maintained control over the boxes since commencement of the leases.

34.   Plaintiffs are current on their lease payments.  They have an expectation of privacy in the interiors of the boxes and their contents.

35.   Plaintiffs leased the boxes at USPV for the sake of convenience, security and peace of mind.  Neither Plaintiff is an owner, officer, director, manager, supervisor, employee, or representative of USPV, and neither is associated with or a customer of the Gold Business that is co-located with or adjacent to USPV.  Neither Plaintiff is aware of any criminal activity occurring at or connected to USPV, and would not have leased a box, or continued to lease a box, at USPV if either become aware of any such activity.

36.   Plaintiffs' boxes contained currency, gold coins, a ring, watches and

**FIRST AMENDED COMPLAINT**

493618.1

important legal documents belonging to Plaintiffs.  These items of property represent Plaintiffs' savings, investments, valuable and cherished personal items and essential documents; they are not contraband, or the proceeds or evidence of illegal activity.

37.    Plaintiffs' property was in their safe deposit boxes when the government seized control of USPV and all of the other safe deposit boxes at USPV on or about March 22, 2021.  Plaintiffs have been unable to enter the USPV facility or access their boxes and their contents since the commencement of the government's search on the morning of March 22, 2021.

**C.**    **The Government Seizes and Searches All USPV Safe Deposit Boxes and Their Contents, Including Plaintiffs'.**

38.    On or about March 9, 2021, the USAO sought and obtained a sealed indictment of USPV.  The indictment did not name any individual defendants and did not contain any specific allegations of wrongdoing by USPV's customers.

39.    Beginning early in the morning on Monday, March 22, 2021, agents of the United States, including DOES 1-10, executed a seizure warrant (the "**seizure warrant**") at USPV.

40.    The seizure warrant stated that, "[t]he items to be seized are the following pieces of business equipment," including "the nests of safety deposit boxes and keys," without any limit or reference to particular safe deposit boxes or descriptions of particular nests.

41.    The seizure warrant further stated that:

> ***This warrant does not authorize a criminal search or seizure of the contents of the safety deposit boxes.***  In seizing the nests of boxes, agents shall follow their written inventory policies to protect their agencies and the contents of the boxes. Also in accordance with their written policies, agents shall inspect the contents of the boxes in an effort to identify their

**FIRST AMENDED COMPLAINT**

owners in order to notify them so that they can claim their

property.  (emphasis added.)

42.     In executing the seizure warrant, the agents closed the parking lot and the USPV facility to the public and to box holders.  *See* "Federal Investigation Takes Over Beverly Hills Strip Mall," *Beverly Hills Courier* (Mar. 25, 2021), available at https://beverlyhillscourier.com/2021/03/25/federal-investigation-takes-over-beverly-hills-strip-mall/ ("The strip mall at the intersection of West Olympic Boulevard and South Palm Drive is hardly something to gawk at—upscale by strip mall standards, but still a strip mall.  But since March 22, dozens of local and federal agents have taken over the lot.").

43.     Once the government had seized USPV, its agents, including Defendants Palmerton, Baily Dress, Beverly and DOES 1-10, proceeded to break into every safe deposit box at the facility, including Plaintiffs' boxes, and emptied each box of its contents.  They rifled through the contents of these boxes and inspected all the contents of the boxes.  They continued these inspections for each box even after they discovered information sufficient to identify the box holder.

44.     In addition, on information and belief, the government deliberately disabled the biometric data reader, through which box holders gained access to the vault area in which their safe deposit boxes were located, so that Plaintiffs and other box holders could not later anonymously establish their ownership of the contents of their boxes.

45.     The search of the USPV safe deposit boxes, including that of Plaintiffs, was not an inventory search.  If the government had been conducting a lawful inventory search to prevent loss and avoid accusations of theft, there would have been no reason to forcibly open USPV's locked safe deposit boxes that were otherwise impervious to tampering.

46.     On Tuesday, March 23, 2021, when the agents were still present at USPV, counsel for the box holder in Case No. 02803 visited the site and attempted

13

**FIRST AMENDED COMPLAINT**

to speak with an agent to learn whether there was a warrant for his clients' safe deposit boxes, and, if so, to obtain a copy of the warrant pursuant to the Federal Rules of Criminal Procedure.  A police officer guarding the perimeter carried counsel's message inside to the agents and returned with a message that no agents would come out to speak with counsel, but that counsel could call a telephone number that the agents provided.  The number provided was the FBI's general Los Angeles number.  Counsel left a voicemail message at that number, but his call was never returned.

47.   Counsel subsequently learned that Assistant United States Attorney ("**AUSA**") Andrew Brown was handling the matter.  That same day, another attorney for the box holder in Case No. 02803 contacted AUSA Brown to attempt (a) to determine whether his clients' safe deposit boxes had been searched; (b) to determine whether his clients' property had been seized; and (c) in the event either had occurred, to obtain a copy of the warrant pursuant to the Federal Rules.

48.   During the ensuing conversation, AUSA Brown told the attorney the following:

- The government is seizing all safe deposit boxes at the site, even though the boxes are separately leased by numerous unknown individuals;

- The government will inspect and inventory the contents of every box and use that information to try to identify every box's owner(s);

- The government will not read the contents of notebooks or thumb drives that they find in the boxes;

- A search and seizure warrant was served on the owners or management of USPV, but AUSA Brown declined to disclose either the names of the persons served or their counsel;

- The government will not provide the seizure warrant to a USPV

14

**FIRST AMENDED COMPLAINT**

493618.1

1    box holder unless and until the box holder identifies himself or
2    herself to the government;

3    • If a box holder identifies himself or herself, the government will
4    commence an investigation of the holder to determine whether
5    he or she came by the contents of his or her box legally, and the
6    box holder will be required to establish his or her claim to lawful
7    ownership of the property contained in the box; and

8    • The government assumes that all USPV box holders are engaged
9    in illegal activity, even though the government does not know
10   the identity of the box holders or the contents of their boxes.

11   49.   Accordingly, as confirmed by AUSA Brown, it was the government's
12   plan all along to subject every USPV box holder to criminal investigation by doing
13   the following:

14   (a)   Each safe deposit box holder would be required to disclose his or
15   her identity to the government to make a claim for the return of the contents of their
16   box.

17   (b)   Once provided with the box holder's identity, the government
18   would conduct a criminal investigation into that person based upon AUSA Brown's
19   belief that anybody who utilized the safe deposit boxes at USPV was a criminal
20   engaged in felonious activity.

21   (c)   The government would also refuse to return property found in a
22   safe deposit box to its owner unless the box holder explained to the government how
23   they had obtained that property and could prove to the government that it was not
24   related to criminal activity.

25   **D.   The Government's Phony Claims Process.**

26   50.   As of March 26, 2021, the USPV location was closed and a sign − a
27   true and correct depiction of which is pictured below − was affixed to the front door
28   directing safe deposit box holders to use the web link *forms.fbi.gov/uspvclaims* to

15

**FIRST AMENDED COMPLAINT**

"initiate a claim for your US Private Vaults box":



51.     The form located at forms.fbi.gov/uspvclaims − a true and correct depiction of which is pictured below − stated: "To make a claim for property stored at U.S. Private Vaults in Beverly Hills, California, please provide the following information.  An FBI agent will contact you for additional details."  The form required the box holder to enter his or her first name, last name and contact number for submission:

///
///
///
///
///
///
///
///
///
///

16

52.     The form also required the person submitting it to acknowledge that, "it is a federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning the facts on this form as applicable under the provisions of Title 18, United States Code, Section 1001, et seq."

53.     On information and belief, the government's website and form were nothing more than a subterfuge for obtaining the identities and contact information of USPV box holders, in furtherance of the government's plan to criminally investigate all USPV box holders, as confirmed by the following facts, among others:

(a)     The form did not ask, or even allow, a box holder to list his or her box number, and thus it could not possibly aid the government in returning the contents of particular safe deposit boxes to their owners;

(b)     Government representatives have admitted to persons who have completed and submitted forms that the FBI had no established or standardized policies, procedures, or process for returning the contents of safe deposit boxes to their owners; and

(c)     Since at the time the government had not initiated forfeiture

17

**FIRST AMENDED COMPLAINT**

proceedings against the contents of the vast majority of safe deposit boxes, including Plaintiffs', there was no legal basis for requiring box holders to submit "claims" to obtain return of their property.

54.    On information and belief, attorneys representing several different USPV box holders have proposed to AUSA Brown that he use a special master or a government staffed filter team to return property seized from the safe deposit boxes at USPV, to allow the government to return property to box holders without them having to reveal their identities to investigators or prosecutors.  AUSA Brown rejected these proposals out of hand.

**E.    The Government's Public Statements and Admissions.**

55.    In an April 2, 2021 public filing in Case No. 02803, the USAO made the following relevant statements, among others, concerning the seizure and search of the USPV safe deposit boxes, which necessarily included Plaintiffs' boxes:

(a)    "USPV was a criminal business that conspired with its criminal clients to distribute drugs, launder money, and structure transactions to avoid currency reporting requirements, among other offenses."

(b)    "[T]he majority of box holders are criminals . . . ."

(c)    "The government obtained a sealed criminal seizure warrant for, among other things, the nests of safety deposit boxes located at USPV."

(d)    "During the week of March 22 through 26, federal agents executed the seizure warrant and removed the contents of safety deposit boxes, inventorying their contents in the process . . . ."

(e)    "The inventory was completed on site."

(f)    "Agents left USPV on March 26, 2021."

(g)    "[A]ll the inventory searches were completed by March 26, 2021."

56.    In an April 16, 2021 public filing in Case No. 03254, the USAO made the following additional statements, among others, concerning the seizure and

**FIRST AMENDED COMPLAINT**

search of the USPV safe deposit boxes, which necessarily included Plaintiffs' boxes:

(a)    "[F]ar from using anonymity to protect the powerless . . . plaintiffs hope to use it to protect rich criminals from the consequences of their crimes, and to keep their ill-gotten gains."

(b)    "The government seized the nests of safety deposit boxes because there was overwhelming evidence that USPV was a criminal enterprise that conspired with its criminal clients to distribute drugs, launder money, and structure transactions to avoid currency reporting requirements, among other offenses."

(c)    "[T]he majority of the box holders are criminals who used USPV's anonymity to hide their ill-gotten wealth … ."

57.    These statements confirm that, at least in Plaintiffs' case, the government had no probable cause to seize, search and retain the contents of Plaintiffs' safe deposit boxes, and did so based only on the entirely false and fictitious assumption that Plaintiffs were criminals engaged in felonious criminal activity merely because they leased safe deposit boxes at USPV.

**F.    The Government's Unconstitutional and Invalid Administrative Forfeiture Proceedings.**

58.    On or about May 20, 2021, the FBI initiated an administrative forfeiture proceeding (the "**AFP**") by issuing a "Notice of Seizure of Property and Initiation of Administrative Forfeiture Proceedings," which attached a list of assets seized from USPV safe deposit boxes that the government sought to forfeit (together, the "**FBI Notice**").

59.    On or about May 20, 2021, the FBI also sent individualized notices of the AFP to certain USPV box holders the government had identified from documents contained in those box holders' safety deposit boxes.

60.    Plaintiffs were among the hundreds of USPV box holders who received individualized notices for the contents their USPV boxes from the FBI (the "**Individualized Notices**").

19

**FIRST AMENDED COMPLAINT**

61.    The Individualized Notices Plaintiffs received sought to forfeit some, but not all, of Plaintiffs' property stored in their USPV boxes.

62.    The Individualized Notices stated no "facts" for why the property sought to be forfeited was the subject of the AFP, stating only: "The asset(s) referenced in this notice letter were seized on March 22, 2021 by the FBI at U.S. Private Vaults in Beverly Hills, California."

63.    As "Forfeiture Authority" for the AFP, the Individualized Notices stated only that, "[t]he forfeiture of this property has been initiated pursuant to 18 USC 981(a)(1)(C) and the following additional federal laws: 19 U.S.C. §§ 1602-1619, 18 U.S.C. § 983 and 28 C.F.R. Parts 8 and 9."

64.    The Individualized Notices state that, "**TO CONTEST THE FORFEITURE OF THIS PROPERTY IN UNITED STATES DISTRICT COURT YOU MUST FILE A CLAIM**."  According to the Individualized Notices, the "claim should be filed online or by mailing it via the U.S. Postal Service or a Commercial Delivery Service to the FBI.  Pursuant to the Individualized Notices, if a "claim" was not filed by June 24 or June 25, 2021 (depending on when the Individual Notice had been sent), it "may result in the property being forfeited to the United States."

65.    On or about June 9, 2021, in Case No. 03254, the Court entered an order (the ("**June 9, 2021 Order**") holding that:

> The Government cites no federal statute, regulation, or procedural rule that requires claimants in an administrative forfeiture proceeding to identify themselves by their legal names, nor is the Court aware of any such legal authority.

66.    Notwithstanding this ruling, the government has publicly asserted that to be considered valid, any claim contesting the AFP must be filed under the claimant's "true name."  By way of example, in a filing in Case No. 03254, the government stated that under its interpretation of the "Code of Federal Regulations,"

20

**FIRST AMENDED COMPLAINT**

no claimant is "permitted to proceed anonymously"; instead, all claimants "must identify themselves" by using their "true names" when making a claim.

67.     On or about June 21, 2021, Plaintiffs filed Declarations and Claims (the "**Declarations**") with the FBI to avoid having the government declaring their property forfeited without further process.  In their Declarations, both Plaintiffs made clear that they were providing their true names under government compulsion, stating:

> I am only using my true name (instead of a pseudonym) and
> identifying my USPV box number and its contents because the
> government has publicly declared that if I do not, it will deem
> my claim defective and proceed to forfeit my property without
> further process.

**G.     The Court's Finding and Rulings that the Government's Forfeiture Process is Unconstitutional.**

**1.     The Court's June 22, 2021 Order.**

68.     In Case No. 04405, the plaintiffs were all USPV box holders whose property was subject to the AFP.  They moved for a temporary restraining order ("**TRO**") enjoining the "government from forfeiting property based on notices that do not identify the factual and legal basis for the forfeiture."

69.     On or about June 22, 2021, the Court granted the plaintiffs' application for a TRO in that case (the "**June 22, 2021 Order**").  The Court concluded that the FBI Notice, and individualized notices of forfeiture the government had sent to certain USPV box holders, are deficient and unconstitutional as violating the claimants' right to due process of law.

70.     In particular, the Court ruled that:

- "[Under *Gete v. I.N.S.*, 121 F.3d 1285, 1297 (9th Cir.
       1997), and as affirmed in *Al Haramain Islamic Found., Inc.
       v. U.S. Dep't of Treasury*, 686 F.3d 965 (9th Cir. 2012), in a

21

**FIRST AMENDED COMPLAINT**

1   forfeiture proceeding,] 'the Due Process Clause required the
2   [government] to disclose the factual bases for seizure[]' and
3   'the specific statutory provision allegedly violated.'"

4   • "Here, the FBI Notice and the individualized notices
5   comply with neither of the Due Process requirements set
6   forth in *Gete* and affirmed in *Al Haramain*."

7   • "With respect to the factual basis for the seizure of
8   Plaintiffs' property from USPV, the individualized notices
9   state: 'The asset(s) referenced in this notice letter were
10   seized on March 22, 2021 by the FBI at U.S. Private Vaults
11   in Beverly Hills, California[.]' . . . This notice, put bluntly,
12   provides no factual basis for the seizure of Plaintiffs'
13   property whatsoever."

14   • "The notices fare little better as to *Gete*'s second Due
15   Process requirement. In *Gete*, the court held that to satisfy
16   the Due Process rights of known property owners in the
17   forfeiture context, the Government must provide 'notice of
18   the specific statutory provision' that supports the
19   Government's forfeiture proceeding," [such that here]
20   "[t]the notices . . . fall woefully short of the Government's
21   duty to provide the 'specific statutory provision allegedly
22   violated.'"

23   • "This forfeiture, if conducted in a manner that violates the
24   Due Process clause, would by definition deprive Plaintiffs
25   of their constitutional right to due process of law" [and]
26   "[t]hus, at this juncture Plaintiff has carried its burden as to
27   the likelihood of irreparable harm [arising from the
28   government's inadequate notices]."

22
**FIRST AMENDED COMPLAINT**

71.     On or about June 25, 2021, Plaintiff's counsel sent to the government,
by FedEx and U.S. Mail, a "Demand for Immediate Return of Property" (the
"**Demand**") on behalf of Plaintiff.  The Demand notified the government of the June
22, 2021 Order, and requested that the government immediately return Plaintiff's
property because, for the reasons stated in the June 22, 2021 Order, the FBI's
continued retention of Plaintiff's property was (and is) without cause and a violation
of his due process rights.

### 2.     *The Court's July 23, 2021 Order.*

72.     In Case No. 04405, on or about July 23, 2021, the Court granted, in
part, the plaintiffs' motion for preliminary injunction (the "**July 23, 2021 Order**").
Specifically, in regard to plaintiff Joseph Ruiz (the only plaintiff in the case those
property the government was still holding), the Court found that the government
failed to provide any adequate justification for holding on to his property.  The
Court found that, "[m]erely stating that the Government has initiated forfeiture
proceedings against [Ruiz's] property does not offer any insight into how the
Government's continued retention of the $57,000 complies with the dictates of the
Fourth Amendment."

73.     In the July 23, 2021 Order the Court found that, "[i]t is well established
that the deprivation of constitutional rights unquestionably constitutes irreparable
injury."  Accordingly, because the government had neither returned Mr. Ruiz's
property, "nor provided an adequate justification for the prolonged seizure [since
March 22, 2021]," the Court held that Mr. Ruiz "will therefore likely continue to
suffer injury to his Fourth Amendment rights for the foreseeable future if an
injunction does not issue."

### H.     The Government's False And Misleading Affidavit.

74.     On or about August 5, 2021, the government unsealed in full the
Affidavit that it filed to support of the search and seizure warrants for USPV (a
single affidavit was submitted in support of both warrants).  The Affidavit was

23

**FIRST AMENDED COMPLAINT**

relied upon by the Magistrate Judge in issuing the search and seizure warrants.   The Affidavit was sworn to by Defendant Zellhart under penalty of perjury.

### 1.    *The Affidavit Provided No Probable Cause for the Search and Seizure of Plaintiff's USPV Box.*

75.    The Affidavit provided no probable cause whatsoever to seize and search Plaintiff's USPV box.

76.    In fact, despite being over 90-pages in length, the Affidavit made no reference to Plaintiff, his USPV box, the contents of his USPV box, or the nest of safe deposit boxes that included his box.  Nor did the Affidavit provide any information whatsoever about any particular box or nests of boxes at USPV.

### 2.    *The Affidavit Was Materially False and Misleading Regarding the Government's True Plan with Respect to Plaintiff's USPV Box.*

77.    The Affidavit was materially false and misleading in that it did not disclose that the government's true plan all along was to seize and search Plaintiff's USPV box (and those of hundreds of other USPV customers) without any probable cause, and then use the fruits of that unlawful seizure and search to conduct a criminal investigation of Plaintiff (and other USPV customers).

78.    Nor did the Affidavit anywhere disclose that the government had no plan or intent to return Plaintiff's property (or that of hundreds of other USPV customers), and that instead of returning Plaintiff's property (despite knowing his name and address as a result of the search of his box), the government planned and intended to initiate administrative forfeiture proceedings against his property (and that of hundreds of other USPV customers), without any cognizable legal or factual basis for doing so.

79.    Rather, the Affidavit falsely and misleadingly stated that: "The warrants authorize the seizure of the nests of the boxes themselves, ***not their contents***.  By seizing the nests of safety deposit boxes, the government will

24

**FIRST AMENDED COMPLAINT**

necessarily end up with custody of what is inside those boxes initially.  **Agents will follow their written inventory policies to protect their agencies from claims of theft or damage to the content of the boxes, and to ensure that no hazardous items are unknowingly stored in a dangerous manner**."  (emphasis added).

80.    The Affidavit also falsely and misleadingly stated that: "Agents will **attempt to notify the lawful owners of the property stored in the boxes how to claim their property**, such as by posting that information on the internet or at USPV itself, or by contacting the owners directly.  In order to notify the owners directly, agents will, in accordance with their policies regarding an unknown person's property, look for contract information or something which identifies the owner, (USPV recommends that box renters include their or their designees' telephone numbers on a note in a box in the event that UPSV removes the contents for nonpayment of rental fees.)"  (emphasis added).

82.    The Affidavit further falsely and misleadingly stated that: "The FBI policy regarding taking custody of an unknown person's property provides, in part, that agents 'inspect the property as necessary to identify the owner and preserve the property for safe keeping.'   The inspection '**should extend no further than necessary to determine ownership**.'" (emphasis added).

83.    Further, the Affidavit nowhere purports to explain why a receivership, a temporary restraining order, or some other legal mechanism would not be sufficient to preserve the property of USPV's customers without the need for a pretextual inventory search.

84.    In short, the Affidavit created the false and misleading impression that the government needed to search Plaintiff's USPV box (and that of hundreds of other USPV customers) to be able to inventory Plaintiff's property and return it to him, when, in fact, it was always the government's plan and intent to use the search as a pretext to criminally investigate Plaintiff (and hundreds of other USPV customers) and seek to administratively forfeit his property (and that of hundreds of

**FIRST AMENDED COMPLAINT**

other USPV customers) without a legitimate legal or factual basis for doing so.

### 3. The Affidavit was False and Misleading in Numerous Other Material Respects.

85. The Affidavit was false and misleading in numerous other material respects.

86. *First*, the Affidavit did not inform the Magistrate Judge that USPV has been operating in Beverly Hills since 2011; that it was a member of the Beverly Hills Chamber of Commerce; or that there was nothing clandestine about it as it advertises by prominent store front signage and on the Internet.  Likewise, nowhere in the Affidavit did the government disclose that USPV has hundreds of customers with respect to whom the government had no cause whatsoever to believe that they were engaged in any criminal activity or were concealing contraband at USPV.

87. *Second*, throughout the Affidavit the government falsely and misleadingly suggested that Plaintiff and hundreds of USPV customers are engaged in criminal conduct of a serious nature, omitting the material fact that USPV's customers include retirees, professionals and other entirely law-abiding citizens who, like Plaintiff, stored their property at UPSV for the sake of convenience and security.

88. *Third*, the Affidavit falsely and misleadingly stated that USPV's "business is designed to appeal to criminals for customers," omitting the material fact that the government had no factual basis or other cause to believe that Plaintiff (or hundreds of other USPV customers) was a criminal or engaged in criminal activity of any sort.

89. *Fourth*, the Affidavit falsely and misleadingly stated that, "USPV also launder for its customers cash that is purported to be drug proceeds by converting it into precious metals or wire transfers," omitting the material fact that the government had no factual basis or other cause to believe that Plaintiff's cash (or the cash of hundreds of other USPV customers) was "drug proceeds."  Nor did the

government disclose that Plaintiff never had USPV convert any of his money into "precious metals or wire transfers."

90.     *Fifth*, the Affidavit falsely and misleadingly stated that, "[b]y using its customers' criminal proceeds to maintain its own anonymous facility for the storage of criminal proceeds, USPV engages in money laundering," omitting the material fact that the government had no factual basis or other cause to believe that Plaintiff's property (or that of hundreds of other USPV customers) was "criminal proceeds."

91.     *Sixth*, the Affidavit falsely and misleadingly stated that, "[b]y providing and promoting total anonymity, USPV caters to and attracts criminals who seek to keep their identities and the source of their cash beyond the reach of banks, regulators, the IRS and law enforcement," omitting the material fact that the government had no factual basis or other cause to believe that Plaintiff was a criminal or ever sought to place his identity or the source of his property "beyond the reach" of any appropriate government authority.

92.     *Seventh*, the Affidavit falsely and misleadingly stated that USPV "know[s] that their customers are using the vault for criminal purposes, such as storing illegal proceeds," omitting the material fact that USPV did not and could not know that Plaintiff (and hundreds of other USPV customers) were "using the vault for criminal purposes" because Plaintiff (or those hundreds of customers) was not a criminal, was not storing "illegal proceeds" and was not using USPV for any criminal purpose.

93.     *Eighth*, the Affidavit falsely and misleadingly stated that, "traditional banks and financial institutions . . .  provide safe deposit boxes . . . in a manner which does not cater to and attract criminals," creating the false impression that Plaintiff (and other USPV customers) utilized USPV for criminal purposes, omitting the material facts that many traditional banks no longer provide safe deposit boxes (or do not in convenient locations), and that, on information and belief, at least one prominent traditional bank recommended that individuals needing a safe deposit box

27

**FIRST AMENDED COMPLAINT**

1  utilize UPSV.

2    94.   *Ninth*, the Affidavit falsely and misleadingly stated that, "USPV

3  Principals Help Its Customers Evade Law Enforcement," omitting the material fact

4  that USPV's principals are unknown to Plaintiff and that they have never assisted

5  him (or hundreds of other USPV customers) to "evade law enforcement."

6    95.   *Tenth*, the Affidavit falsely and misleadingly stated that, "there is no

7  reason for non-criminal clients to use USPV," and that it would be "irrational" for

8  "non-criminal customer to choose USPV," omitting the material facts that the

9  government had no factual basis or other cause to believe that Plaintiff (or hundreds

10  of other USPV customers) was a criminal, and that there were many rational reasons

11  for law abiding citizens to choose USPV, including its location, security features,

12  hours of operation, insurance and the lack of other convenient safe deposit box

13  facilities.

14    **4.   *The Affidavit's False and Misleading Statements and Omissions of***

15    ***Material Facts were Made Knowingly or with Reckless Disregard for***

16    ***Their Truth or Falsity.***

17    96.   Plaintiff is informed and believes that all of the materially false and

18  misleading statements in the Affidavit, and all of the omissions of material fact from

19  the Affidavit, were made deliberately or with reckless disregard for their truth or

20  falsity.

21  **I.   The Government's Incomplete Return of Plaintiffs' Property**

22    97.   On or about September 21, 2021, the USAO informed Plaintiffs that no

23  civil forfeiture action would be filed against Plaintiffs' property seized from their

24  USPV safety deposit boxes, and that all of their seized property, both cash and

25  non-cash items, would be returned to Plaintiffs.

26    98.   Subsequently, on or about the morning of September 29, 2021,

27  Plaintiffs' representative met with Special Agents of the FBI, including Special

28  Agent Crystal Morales ("**Special Agent Morales**"), to receive Plaintiffs' non-cash

items.  At this meeting, Plaintiffs received some of Plaintiffs' property but not all of the property Plaintiffs had in their USPV safe deposit boxes at the time they were seized by the government.  Plaintiffs asked Special Agent Morales if the property she was returning was all of Plaintiffs' non-cash items in the possession of the government from both of Plaintiffs' USPV safe deposit boxes, and Special Agent Morales told them that it was.

99.    Later that same day, however, Special Agent Morales contacted Plaintiffs' representative to inform them that the government had inadvertently failed to return to Plaintiffs 385 gold coins belonging to them.

100.    On or about October 6, 2021, Plaintiffs' representative once again met with Special Agent Morales at the Federal Building, and another unnamed FBI Special Agent.  Special Agent Morales gave Plaintiffs the missing 385 gold coins belonging to Plaintiffs.  Plaintiffs asked Special Agent Morales if she was aware of any additional non-cash items belonging to Plaintiffs being held by the government, including an antique gold pocket watch, a silver wedding band and papers of a legal nature.  Special Agent Morales and the unnamed Special Agent both told Plaintiffs that they had no additional non-cash items to return to Plaintiff, and that all of the non-cash items the government had seized had now been returned.

101.    On or about October 13, 2021, Plaintiffs contacted the USIAO to inform it that not all of Plaintiffs' non-cash items had been returned, including an antique gold pocket watch, a silver wedding band and legal papers.  On or about October 14, 2021, Plaintiffs' representative was contacted by Special Agent Morales who informed Plaintiffs that the FBI had located additional property belonging to Plaintiffs that had not been returned, and that this property would be returned to them.

102.    On or about October 20, 2021, Plaintiffs' representative met with Special Agent Morales for the third time.  Special Agent Morales provided Plaintiffs with an antique gold pocket watch, but not with the missing silver wedding band or

**FIRST AMENDED COMPLAINT**

1    legal papers.  Once again Special Agent Morales told Plaintiffs that the government

2    had no other non-cash items of Plaintiffs to return.

3        103.   Notwithstanding requests by Plaintiffs, the government has never

4    provided Plaintiffs with a documentary and/or video-taped inventory, audit, or other

5    record of Plaintiffs' property seized by the government from Plaintiffs' USPV safe

6    deposit boxes.

7        104.   Plaintiffs have been provided with forms from the government

8    purportedly for the wire transfer of Plaintiffs' seized funds from the government to a

9    bank account controlled by Plaintiffs.  Plaintiffs have completed these forms and

10   submitted them to the government, however, as of the date of this Complaint,

11   Plaintiffs' seized funds have not been returned to them.

12       105.   The government after having represented that no civil forfeiture action

13   would be filed against Plaintiffs' property, still continues to hold property belonging

14   to Plaintiffs without any legal or factual basis or justification, including, but not

15   limited to, a silver wedding band and important, private and confidential essential

16   legal papers.

17   **J.      Plaintiffs Are Suffering Ongoing Harm.**

18       106.   Notwithstanding the government's represented that all of Plaintiffs'

19   property would be return to them, property of Plaintiffs that they stored in their safe

20   deposit boxes remains in the government's custody and control, and Plaintiffs

21   continue to be deprived of any use, benefit, enjoyment, or access to that property.

22       107.   Further, the government has failed to return documents of Plaintiffs',

23   including, but not limited to, legal papers, and, on information and belief has created

24   copies of documents belonging to Plaintiffs and/or has created records containing

25   information derived from Plaintiffs' documents.

26   ///

27   ///

28   ///

30

**FIRST AMENDED COMPLAINT**

493618.1

# GOVERNING LEGAL PRINCIPLES

## A.    Relevant Search and Seizure Law.

108.   The Fourth Amendment to the United States Constitution provides that, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend IV.

### *1.    The Probable Cause Requirement.*

109.   The confiscation, detention, inspection and/or cataloguing of the contents of a safe deposit box containing private property is a search and seizure for purposes of the Fourth Amendment. *See, e.g., United States v. Chadwick*, 433 U.S. 1, 11 (1977) ("By placing personal effects inside a double-locked footlocker, respondents manifested an expectation that the contents would remain free from public examination."), *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565 (1991); *United States v. Spilotro*, 800 F.2d 959, 962 (9th Cir. 1986) ("We begin by noting that there is no question that defendant Blasko has standing to challenge the search of his home, person, and safe deposit box."); *United States v. Wetselaar*, 2013 WL 8206582, *10 (D. Nev. Dec. 31, 2013) ("[A]s renters of those boxes, Defendants had a reasonable expectation of privacy in the contents, which include the space inside the box and the inner metal liner itself.").

110.   The Supreme Court has made clear that a warrant must describe the places to be searched and the items to be seized with particularity and supported by probable cause specific to those places and items:

> The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one "particularly describing the place to be searched and the persons or things to be seized." The manifest purpose of this particularity

31

1      requirement was to prevent general searches.  By limiting the

2      authorization to search to the specific areas and things for

3      which there is probable cause to search, the requirement

4      ensures that the search will be carefully tailored to its

5      justifications, and will not take on the character of the

6      wide-ranging exploratory searches the Framers intended to

7      prohibit.  Thus, the scope of a lawful search is "defined by the

8      object of the search and the places in which there is probable

9      cause to believe that it may be found.  Just as probable cause

10      to believe that a stolen lawnmower may be found in a garage

11      will not support a warrant to search an upstairs bedroom,

12      probable cause to believe that undocumented aliens are being

13      transported in a van will not justify a warrantless search of a

14      suitcase."

15 *Maryland v. Garrison*, 480 U.S. 79, 84 (1987) (quoting *United States v. Ross*,

16 456 U.S. 798, 824 (1982)); *accord United States v. SDI Future Health, Inc.,* 568

17 F.3d 684, 702-703 (9th Cir. 2009) ("A warrant must not only give clear instructions

18 to a search team, it must also give legal, that is, not overbroad, instructions.  Under

19 the Fourth Amendment, this means that there [must] be probable cause to seize the

20 particular thing[s] named in the warrant.  [P]robable cause means a fair probability

21 that contraband or evidence of a crime will be found in a particular place, based on

22 the totality of circumstances.") (citations and quotation marks omitted).

23      111.   Consequently, the search of a place or the seizure of an item pursuant

24 to an overbroad warrant for which there is no specific probable cause is invalid.  *See*

25 *United States v. Know,* 58 F.3d 423, 427 (9th Cir. 1995) ("The warrant authorized

26 the seizure of virtually every document and computer file at HK Video . . . . [T]he

27 warrant contained no limitations on which documents within each category could be

28 seized or suggested how they related to specific criminal activity.  By failing to

**FIRST AMENDED COMPLAINT**

1   describe with any particularity the items to be seized, the warrant is

2   indistinguishable from the general warrants repeatedly held by this court to be

3   unconstitutional.").

4       112.   Moreover, probable cause in the warrant context requires more than

5   "mere suspicion" that the place to be searched or the item to be seized is connected

6   to criminal activity; it requires an "evidentiary nexus" to the alleged criminal

7   activity. *United States v. Wanless*, 882 F.2d 1459, 1466 (9th Cir. 1989) ("Even if

8   the evidence here would . . . justify the . . . suspicion that there were illegal

9   substances . . . [m]ere suspicion does not rise to the level of probable cause.")

10   (internal quotations omitted); *United States v. Schultz*, 14 F.3d 1093, 1097-98 (6th

11   Cir. 1994) ("While an officer's 'training and experience' may be considered in

12   determining probable cause, it cannot substitute for the lack of evidentiary nexus . . .

13   between the safe deposit boxes and any criminal activity.  Officer Ideker did not

14   have anything more than a guess that contraband or evidence of a crime would be

15   found in the boxes, and therefore the . . . warrant should not have been issued.").

16       **2.      The Government Cannot Deliberately or Recklessly Mislead the**

17              **Issuing Magistrate Judge.**

18       113.   It is also well established that a warrant based upon deliberately or

19   recklessly false or misleading information material to the issue of probable cause is

20   invalid, in whole or in part.  As the Supreme Court has decreed:

21              [W]hen the Fourth Amendment demands a factual showing

22              sufficient to comprise "probable cause," the obvious

23              assumption is that there will be a *truthful showing*.  This does

24              not mean 'truthful' in the sense that every fact recited in the

25              warrant affidavit is necessarily correct, for probable cause may

26              be founded upon hearsay and upon information received from

27              informants, as well as upon information within the affiant's

28              own knowledge that sometimes must be garnered hastily.  But

33

**FIRST AMENDED COMPLAINT**

1        surely it is to be 'truthful' in the sense that the information put

2        forth is believed or appropriately accepted by the affiant as

3        true.  It is established law, that a warrant affidavit must set

4        forth particular facts and circumstances underlying the

5        existence of probable cause, so as to allow the magistrate to

6        make an independent evaluation of the matter.  If an

7        informant's tip is the source of information, the affidavit must

8        recite some of the underlying circumstances from which the

9        informant concluded that relevant evidence might be

10       discovered, and some of the underlying circumstances from

11       which the officer concluded that the informant, whose identity

12       need not be disclosed, . . . was "credible" or his information

13       "reliable."  Because it is the magistrate who must determine

14       independently whether there is probable cause, it would be an

15       unthinkable imposition upon his authority if a warrant

16       affidavit, revealed after the fact to contain a deliberately or

17       reckless false statement, were to stand beyond impeachment."

18  *Franks v. Delaware*, 438 U.S. 154, 164-65 (1984) (citations and internal quotations

19  omitted, emphasis in original); *see also United States v. Perkins*, 850 F.3d 1109,

20  1123 (9th Cir. 2017) ("We hold that the district court clearly erred in finding that

21  Agent Ensley did not omit relevant information with at least a reckless disregard for

22  whether the omissions would render the warrant application misleading.  Had the

23  omitted information been included, the application would not have supported

24  probable cause.  We, therefore, reverse the district court's denial of the motion to

25  suppress evidence obtained pursuant to the search warrant, and vacate Perkins'

26  conviction.").

27       114.   The "good faith" exception to a legally insufficient search or seizure

28  warrant, recognized by the Supreme Court in *United States v. Leon*, 468 U.S. 897

34

**FIRST AMENDED COMPLAINT**

1  (1984), does not apply where the warrant is "so lacking in indicia of probable cause

2  as to render official belief in its existence entirely unreasonable." *Id.* at 923; *see*

3  *also United States. v. Underwood*, 725 F.3d 1076, 1085-86 (9th Cir. 2013) ("An

4  affidavit is so lacking in indicia of probable cause, or bare bones, when it fails to

5  provide a colorable argument for probable cause.  A colorable argument is made

6  when 'thoughtful and competent judges' could disagree that probable cause does not

7  exist.  Here . . . the affidavit submitted . . . in support of the state search warrant . . .

8  was so deficient as to render official belief in its existence entirely unreasonable.")

9  (citations omitted).

10  ### 3.    *Inventory Versus Investigatory Searches.*

11  115.   The Supreme Court has held that, "the opening of containers found

12  during inventory searches is based on the principle that an inventory search must not

13  be a ruse for a general rummaging in order to discover incriminating evidence"; that

14  "inventory searches should be designed to produce an inventory"; and that

15  "individual police officer[s] must not be allowed so much latitude that inventory

16  searches are turned into a purposeful and general means of discovering evidence of

17  crime." *Florida v. Wells*, 495 U.S. 1, 4-5 (1990) (internal quotations omitted).

18  116.   For an inventory search to be valid, it must be required by and

19  conducted in accordance with established and standardized policies and procedures.

20  *See United States v. Bulacan,* 156 F.3d 963, 970 (9th Cir. 1998) ("discretion when

21  conducting an inventory" must be "exercised according to standard criteria and on

22  the basis of something other than suspicion of evidence of criminal activity")

23  (quoting *Wells*, 495 U.S. at 3-4); *United States v. Johnson*, 936 F.2d 1082, 1084 (9th

24  Cir. 1991) ("[A]n inventory search is unconstitutional unless it is conducted both (a)

25  pursuant to an established inventory-search policy . . . and (b) in accordance with

26  the official procedures of the relevant [law enforcement agency]".).

27  117.   The purpose of an inventory search, according to the Supreme Court,

28  must be limited to "the protection of the owner's property while it remains in police

35

**FIRST AMENDED COMPLAINT**

custody; the protection of the police against claims or disputes over lost or stolen property; and the protection of the police from potential danger." *South Dakota v. Opperman*, 428 U.S. 364, 368 (1976) (citations omitted).

118.   Thus, "[a]n inventory search will not be sustained where the court believed that the officers were searching for incriminating evidence of other offenses." *United States v. Feldman*, 788 F.2d 544, 553 (9th Cir. 1986); *see also United States v. Johnson*, 889 F.3d 1120, 1125 (9th Cir. 2018) (holding that inventory searches "must be non-investigative").

119.   In the course of an inventory search, government agents are not permitted to read written documents, as they may contain information that goes well beyond the allowed limited scope of an inventory search. *See United States v. Khoury*, 901 F.2d 948, 959 (11th Cir. 1990) (reading diary during inventory search was a Fourth Amendment violation; the government agent was only allowed to flip through the diary to see if any separate document or object was stuck between its pages); *see also United States v. Santos*, 961 F. Supp. 71, 73–74 (S.D.N.Y.1997) (finding that reading all written material among defendant's possessions during inventory search was an "affirmative, investigatory act" in violation of the Fourth Amendment).

**B.     Relevant Fifth Amendment Due Process Principles.**

120.   The Due Process Clause of the Fifth Amendment to the United States Constitution provides that, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const., amend. V.

121.   The government's continued retention of seized property – even if initially lawful – raises the issue of procedural due process. *See Case v. Eslinger*, 555 F.3d 1317, 1330 (11th Cir. 2009) ("A complaint of continued retention of legally seized property raises an issue of procedural due process. . ."); *see also Al Haramain Islamic Foundation*, 686 F.3d at 980 ("[T]he Constitution does require that the government take reasonable measures to ensure basic fairness to the private

36
**FIRST AMENDED COMPLAINT**

party and that the government follow procedures reasonably designed to protect against erroneous deprivation of the private party's interests."); *Lewis v. City of Culver City*, 2018 WL 1406609, *2 (C.D. Cal. Mar. 19, 2018) ("[T]he continued retention of legally seized property would raise an issue of procedural due process . . . ."); *Lena Sutton* v. *Leesburg, Alabama,* 2021 WL 1264244, *13 (N.D. Ala. Apr. 6, 2021) ("[T]he continued retention of legally seized property. . . raises an issue of procedural due process.").

122.    Procedural due process includes the right to "sufficient notice concerning the factual and legal bases for [deprivation of property rights]."  *Gete*, 121 F.3d at 1297.  Thus, where the government has seized property, it must provide notice of "the exact reasons for the seizure, as well as the particular statutory provisions and regulations" at issue.  *Id*. at 1297.

123.    It is a matter of well established constitutional jurisprudence that the government may not require a person to waive his Fifth Amendment privilege against self-incrimination in order to vindicate his Fourth Amendment right against unreasonable searches and seizures.  *See Simmons v. United States*, 390 U.S. 377, 394 (1968) (where defendant "was obliged either to give up what he believed, with advice of counsel, a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment against self-incrimination," Court found "it intolerable that one constitutional right should have to be surrendered in order to assert another"); *Bittaker v. Woodford*, 331 F.3d 715, 724 (9th Cir. 2003) ("The scope of required disclosure should not be so broad as to effectively eliminate any incentive to vindicate [one's] constitutional right[s]."); *Gates v. City of Chicago*, 623 F.3d 389, 441 (7th Cir. 2010) ("[T]he City[s]. . . .procedure improperly places on the arrestee the burden of proof to establish that he had a lawful right to the property. . . .  [S]uch a burden [improperly] impos[es] a criminal sanction in the absence of criminal conduct.").

**FIRST AMENDED COMPLAINT**

**C.** *Bivens*.

124.   In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court held that, "violation of [the Fourth Amendment's] command by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct," *id.* at 389, and that a plaintiff "is entitled to recover money damages for any injuries he has suffered as a result of the agent's violation of the Amendment." *Id.* at 397; *see also Boule v. Egbert*, 980 F.3d 1309, 1315 (9th Cir. 2020) (Plaintiffs' "Fourth Amendment claim . . . is a permissible area for *Bivens* claims," and thus "may proceed as a *Bivens* damages claim.")

125.   In *Bivens*, the plaintiff alleged that federal agents had engaged in an unreasonable search of his apartment.  403 U.S. 389-90.  In holding that the plaintiff could bring a damages action against the federal agents who engaged in the unreasonable search, the Supreme Court held that:

> [T]he Fourth Amendment operates as a limitation upon the exercise of federal power . . . . [I]t guarantees to citizens of the United States the absolute right to be free from unreasonable searches and seizures carried out by virtue of federal authority. And where federally protect rights have been invaded it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief.

*Bivens*, 403 U.S. at 392 (internal quotation omitted).

126.   Furthermore, the Supreme Court has long held that punitive damages may be awarded in a *Bivens* action.  *See Carlson v. Green*, 446 U.S. 14, 22 (1980) ("Punitive damages are 'a particular remedial mechanism normally available in the federal courts,' and are especially appropriate to redress the violation by a government official of a citizen's constitutional rights.") (citation omitted).

**FIRST AMENDED COMPLAINT**

**D.    *Destruction of Documents, Records Or Files*.**

127.    Pursuant to *Comprehensive Drug Testing*, 621 F.3d 1174-75, the Court has the authority to require the government to destroy any documents, records, and/or files that it created or compiled and was derived, directly or indirectly, from its unlawful seizure, search and retention of Plaintiffs' property, including, but not limited to, any documents, records and/or files concerning any criminal investigation of Plaintiffs the government conducted arising from or related to the unlawful seizure, search and/or retention of Plaintiffs' personal property. *See id.* ("When, as here, the government comes into possession of evidence by circumventing or willfully disregarding limitations in a search warrant, it must not be allowed to benefit from its own wrongdoing by retaining the wrongfully obtained evidence *or any fruits thereof.*") (emphasis added).

<u>**DEFENDANTS UNLAWFULLY SEIZED,**</u>
<u>**SEARCHED AND DEPRIVED PLAINTIFFS OF THEIR PROPERTY**</u>

128.    Defendants' seizure and search of Plaintiffs' safe deposit boxes and continued detention of their property was (and is) unconstitutional and unlawful in the following respects, among others.

129.    *First*, the seizure warrant for Plaintiffs' boxes was invalid because Defendants lacked any probable cause that the contents of the boxes was contraband or otherwise connected to criminal activity.  That Defendants lacked probable cause is manifest on the face of the seizure warrant, which expressly stated, "[t]his warrant does not authorize a criminal search or seizure of the contents of the safety deposit boxes."  It is also evident from the unsealed portion of the supporting affidavit, which expressly stated that, "[t]he warrants authorize seizure of the nest of boxes themselves, <u>not</u> their contents."  (emphasis in original).

130.    *Second*, Defendants knowingly or recklessly made materially false and misleading statements to the Magistrate Judge who issued the seizure warrant by either falsely stating that the government had probable cause to believe that

**FIRST AMENDED COMPLAINT**

Plaintiffs' boxes, or the nest of safe deposit boxes in which Plaintiffs' boxes were included, contained contraband or was otherwise connected to criminal activity, or by omitting to forthrightly advise the Magistrate Judge that the government lacked such probable cause as to Plaintiffs' boxes or as to the nests of boxes in which Plaintiffs' boxes were included.

131.   *Third*, Defendants cannot avail themselves of the good faith exception to a facially deficient seizure warrant because the warrant was so lacking in indicia of probable cause with respect to Plaintiffs' boxes and their contents as to render official belief in the existence of such probable cause entirely unreasonable.  Indeed, the warrant expressly states that it does not authorize the search or seizure of any box, including Plaintiffs' boxes, for purposes of criminal investigation.

132.   *Fourth,* Defendants acted unreasonably in breaking open Plaintiffs' boxes because they lacked probable cause that the contents of the boxes were contraband or otherwise connected to criminal activity, and by breaking them open, Defendants needlessly subjected its contents to theft and government tampering.

133.   *Fifth,* Defendants' purported "inventory search" of Plaintiffs' boxes was unlawful because their seizure of the boxes and their contents was invalid in the first place, as entirely lacking in probable cause.

134.   *Sixth,* Defendants' purported "inventory search" of Plaintiffs' boxes was also unlawful as it was, in fact, a pretext for conducting an investigatory search, the true purpose of which was to further Defendants' indiscriminate criminal investigation of USPV box holders.

135.   *Seventh,* Defendants' purported "inventory search" of Plaintiffs' boxes was also unlawful because it was not required by or conducted pursuant to established and standardized agency policies and procedures.  If the government had been conducting a proper inventory search—intended to prevent loss and accusations of theft—there would have been no reason to forcibly open USPV's locked safe deposit boxes that were otherwise impervious to tampering.

40

**FIRST AMENDED COMPLAINT**

136.   *Eighth,* since Defendants completed inventorying the contents of Plaintiffs' boxes on or about March 22, 2021, Defendants have deprived Plaintiffs of the use, benefit and enjoyment of their property without due process by failing to promptly establish and implement a legitimate process for the immediate return of their property, insofar as Defendants have not returned all of Plaintiffs' property.

137.   *Ninth,* Defendants' AFP is unconstitutional and invalid because the government has failed to provide Plaintiffs adequate notice of the factual basis and legal grounds on which it seeks to forfeit Plaintiffs' property.

138.   *Tenth*, Defendants impermissibly conditioned the return of Plaintiffs' property on Plaintiffs subjecting themselves to criminal investigation, in violation of their privilege against self-incrimination, and impermissibly compelled Plaintiffs to disclose their true names in the AFP by threatening to deem their claims invalid and declare their property forfeited without further process if they did not.

139.   *Eleventh,* Defendants unlawfully seized documents, including legal papers, belonging to Plaintiffs, and, on information and belief, have unlawfully created copies of those documents, and made other documents, records and files related to the unlawful seizure, search and retention of Plaintiffs' property.

## FIRST CAUSE OF ACTION

### (For Return of Property Pursuant to 41(g))

### (Against Defendants United States, Wilkinson and Koons Johnson)

140.   Plaintiffs repeat and reallege paragraphs 1 through 139 of this First Amended Complaint as if fully alleged herein.

141.   Federal Rule of Criminal Procedure 41(g) provides that, "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return . . . ."

142.   Plaintiffs are each a "person aggrieved" within the meaning of Rule 41(g) because, as described more fully above:

(a)   Defendants unlawfully seized their safe deposit boxes at USPV

**FIRST AMENDED COMPLAINT**

493618.1

1   and their contents, in violation of their Fourth Amendment rights;

2          (b)    Defendants unlawfully searched those boxes and their contents,

3   in further violation of their Fourth Amendment rights; and

4          (c)    Defendants have unlawfully continued to detain their property

5   without cause and have deprived them of the use, benefit and enjoyment of that

6   property, in violation of their Fifth Amendment due process rights.

7          143.   Because Defendants' conduct as described herein constituted an

8   unlawful seizure of Plaintiffs' safe deposit boxes and their contents, an unlawful

9   search of their boxes and their contents and an unlawful deprivation of Plaintiffs'

10  property without due process, Plaintiffs are entitled to the return of their property

11  under Rule 41(g).

12                        **SECOND CAUSE OF ACTION**

13             **(For Damages Pursuant to *Bivens,* 403 U.S. 388 (1971))**

14              **(Against Koons Johnson, Palmerton, Baily Dress,**

15              **Beverly, Murray, Zellhart, and DOES 1-10 individually)**

16         144.   Plaintiffs repeat and reallege paragraphs 1 through 143 of this First

17  Amended Complaint as if fully alleged herein.

18         145.   Under the Fourth Amendment, Plaintiff's safe deposit box and its

19  contents may not be seized and searched without probable cause or based upon false

20  and misleading statements to the issuing Magistrate Judge.

21         146.   Under the Fifth Amendment, Plaintiff may not be deprived of the use,

22  benefit and enjoyment of his property without due process of law.

23         147.   The government has improperly withheld information about the seizure

24  and search of Plaintiff's safety deposit box at USPV to, among other reasons,

25  obscure, conceal and coverup the culpability of federal agents, including

26  Defendants, for the violations of Plaintiff's Fourth and Fifth Amendment rights,

27  including, without limitation, by refusing for months to unseal all but a small

28  portion of the Affidavit filed in support of the search and seizure warrants, and by

**FIRST AMENDED COMPLAINT**

still failing to produce any inventories of Plaintiff's property conducted and/or prepared by the government, including any video recordings purportedly showing government agents inventorying the contents of Plaintiff's box.

148.   Defendants Koons Johnson, Palmerton, Bailey Dress, Beverly, Zellhart and DOES 1-10, as agents of the United States acting under color of authority, violated Plaintiff's Fourth Amendment rights by seizing his safe deposit box and its contents without probable cause and based upon false and misleading statements to the Magistrate Judge who issued the search and seizure warrant.

149.   Defendants Koons Johnson, Palmerton, Bailey Dress, Beverly, Zellhart and DOES 1-10, as agents of the United States acting under color of authority, further violated Plaintiff's Fourth Amendment rights by searching his safe deposit box without probable cause.

150.   Defendants Koons Johnson, Palmerton, Bailey Dress, Beverly, Murray, Zellhart and DOES 1-10, as agents of the United States acting under color of authority, also violated Plaintiff's Fifth Amendment rights by depriving Plaintiff of the use, benefit and enjoyment of the property he was storing in his safe deposit box without due process of law.

151.   Because the conduct of Defendants Koons Johnson, Palmerton, Bailey Dress, Beverly, Murray, Zellhart and DOES 1-10 as described herein constituted an unlawful seizure of Plaintiff's safe deposit box and its contents, an unlawful search of his box and its contents, and an unlawful deprivation of Plaintiff's property without due process, Plaintiff is entitled to damages under *Bivens*, 403 U.S. 388 (1971), and its progeny, including, but not limited to, exemplary and punitive damages.

## THIRD CAUSE OF ACTION

### (Declaratory Relief)

### (Against All Defendants)

152.   Plaintiffs repeat and reallege paragraphs 1 through 151 of this

43

**FIRST AMENDED COMPLAINT**

First Amended Complaint as if fully alleged herein.

153.   As described above, Plaintiffs contend that Defendants have unlawfully seized their property in violation of the Fourth Amendment; have unlawfully searched their property in violation of the Fourth Amendment; and are unlawfully depriving them of the use, benefit and enjoyment of their property without due process in violation of the Fifth Amendment.

154.   As a direct and proximate cause of the ongoing seizure of their personal property by Defendants, Plaintiffs have suffered irreparable injury to their constitutional rights, including but not limited to the unjust deprivation of their property.  Declaratory relied is necessary to remedy this injury.  Without appropriate declaratory relief, this injury will continue.

155.   Defendants contend that their seizure, search and continued and indefinite detention of Plaintiffs' property is reasonable and lawful, and therefore Plaintiffs are not entitled to relief.

156.   Accordingly, a judicial declaration is necessary and appropriate at this time and under these circumstances, so that Plaintiffs may ascertain their rights to regain possession of their personal property that Defendants have seized and are continuing to detain, and to do so without having to subject themselves to criminal investigation.

157.   Plaintiffs ask the Court to enter judgment declaring that Defendants' ongoing seizure, search and retention of their property seized from their UPSV safe deposit box violated the Fourth and Fifth Amendment.

158.   Plaintiffs ask the Court to enter judgment declaring that Defendants' failure to provide Plaintiffs with any inventory, audit and or other records, including but not limited to any video recording of the search of Plaintiffs' property, is unlawful and in violation of Plaintiffs' rights, including but not limited to their rights under Federal Rule of Criminal Procedure 41(f)(1)(D).

159.   Plaintiffs ask the Court to enter judgment that Defendants' failure to

44

**FIRST AMENDED COMPLAINT**

493618.1

1   destroy all documents, records and files created or compiled and that were derived,

2   directly or indirectly, from the government's unlawful seizure, search and/or

3   retention of Plaintiffs' property, other than records needed to reunite Plaintiffs with

4   their property, violates the Fourth Amendment.

5   **FOURTH CAUSE OF ACTION**

6   **(For Order Disclosing Inventory Pursuant to Rule 41(f))**

7   **(Against Defendants United States, Wilkison and Koons Johnson)**

8       160.   Plaintiffs repeat and reallege paragraphs 1 through 159 of this

9   First Amended Complaint as if fully alleged herein.

10      161.   Federal Rule of Criminal Procedure 41(f)(1)(C) provides, in relevant

11  part, that, "[t]he officer executing the warrant must give a copy of the warrant and a

12  receipt for the property taken to the person from whom, or from whose premises the

13  property was taken . . . ."

14      162.   Federal Rule of Criminal Procedure 41(f)(1)(D) provides, in relevant

15  part, that, "[t]he judge must, on request, give a copy of the inventory to the person

16  from whom, or from whose premises, the property was taken and to the applicant for

17  the warrant."

18      163.   The government has taken property from Plaintiffs, namely, their safe

19  deposit boxes at USPV and the contents of those safe deposit boxes.  The

20  government, however, has not provided Plaintiffs with the inventory of their

21  property that was the product of Defendants' purported inventory search of

22  Plaintiffs' safe deposit boxes.  Accordingly, pursuant to Rule 41(f), Plaintiffs are

23  entitled to receive any inventories of their property conducted and/or prepared by

24  the government, including, without limitation, any video-recordings of Defendants

25  inventorying the contents of Plaintiffs' boxes.

26  ///

27  ///

28  ///

**FIRST AMENDED COMPLAINT**

**FIFTH CAUSE OF ACTION**

**(For Order Requiring Destruction of Records)**

**(Against Defendants United States, Wilkison and Koons Johnson)**

164.   Plaintiffs repeat and reallege paragraphs 1 through 163 of this First Amended Complaint as if fully alleged herein.

165.   Defendants' seizure and search of Plaintiffs' personal property in their safe deposit boxes at USPV was unreasonable and in violation of the Fourth Amendment.

166.   Any evidence or records that Defendants obtained, or that the government created, through the unauthorized seizure and search of Plaintiffs' safe deposit boxes were obtained or created in violation of the Fourth Amendment as the "fruit of the poisonous tree."

167.   Plaintiffs ask that his Court order that the government destroy any documents, records and/or files that the government created or compiled and that were derived, directly or indirectly, from its unlawful seizure, search and/or retention of Plaintiffs' personal property stored at USPV, including, but not limited to, any documents, records, or files concerning any criminal investigation of Plaintiffs the government conducted arising from or related to the unlawful seizure, search and/or retention of Plaintiffs' personal property, other than those specific and limited records necessary for reuniting Plaintiffs with their property, and further order that Defendants certify the destruction of such documents, records and files to the Court and Plaintiffs.

## PRAYER FOR RELIEF

Plaintiffs pray for judgment against Defendants as follows:

A.   For an order requiring Defendants to immediately return all property seized from Plaintiffs' Box No. 703 and Box No. 4100 at USPV.

B.   For damages against Defendants Koons Johnson, Palmerton, Bailey Dress, Beverly, Murray, Zellhart, and DOES 1-10, individually, in an amount to be

46

**FIRST AMENDED COMPLAINT**

1  determined at trial, but at least for the value of the property taken.

2        C.    For exemplary and punitive damages against Defendants

3  Koons Johnson, Palmerton, Bailey Dress, Beverly, Murray, Zellhart and DOES 1-

4  10, individually.

5        D.    For a declaration that Defendants' conduct as described in this

6  Complaint has violated Plaintiffs' rights under the Fourth and Fifth Amendments to

7  the United States Constitution.

8        E.    For a declaration that Defendants' failure to provide Plaintiffs with any

9  inventory, audit and or other records, including but not limited to any video

10  recording of the search of Plaintiffs' property, is unlawful and in violation of

11  Plaintiffs' rights, including but not limited to their rights under Federal Rule of

12  Criminal Procedure 41(f)(1)(D).

13        F.    For a declaration that Defendants' failure to destroy any documents,

14  records or files that the government created relating to the unlawful seizure, search

15  and retention of Plaintiffs' property from Box No. 703 and Box No. 4100 at USPV,

16  including, but not limited to, any documents, records or files concerning any

17  criminal investigation of Plaintiffs conducted by the government arising from or

18  related to the unlawful seizure, search and retention of Plaintiffs' property, other

19  than specific and limited records needed to reunite Plaintiffs with their property,

20  violates the Fourth Amendment.

21        G.    For an order requiring Defendants to immediately provide Plaintiffs'

22  counsel with a copy of any inventory or audit of Plaintiffs' property, including but

23  not limited to any video recording of the search of Plaintiffs' property.

24        H.    For an order that the government destroy any documents, records

25  and/or files that the government created or compiled and that were derived, directly

26  or indirectly, from its unlawful seizure, search and/or retention of Plaintiffs'

27  personal property stored at USPV, including, but not limited to, any documents,

28  records, or files concerning any criminal investigation of Plaintiffs the government

47

**FIRST AMENDED COMPLAINT**

conducted arising from or related to the unlawful seizure, search and/or retention of Plaintiffs' personal property, other than those specific and limited records necessary for reuniting Plaintiffs with their property.

    I.    For an order requiring the government to certify to the Court and Plaintiffs that it completed the destruction of all such documents, records, and files.

    J.    For costs and reasonable attorney's fees pursuant to 28 U.S.C. § 2412.

    K.    For such other and further relief as the Court deems just and proper.

DATED: October 25, 2021          **ISAACS | FRIEDBERG LLP**

Jeffrey B. Isaacs, Esq.
Jerome H. Friedberg, Esq.
William A. Wargo, Esq.

*Attorneys for Plaintiffs Jack Doe and Jill Doe*

**FIRST AMENDED COMPLAINT**

493618.1

**DEMAND FOR JURY TRIAL**

Plaintiffs Jack Doe and Jill Doe hereby demand a jury trial on all issues properly triable to a jury pursuant to Federal Rule of Civil Procedure 38.

DATED:  October 25, 2021                    **ISAACS | FRIEDBERG LLP**

Jeffrey B. Isaacs, Esq.
Jerome H. Friedberg, Esq.
William A. Wargo, Esq.

*Attorneys for Plaintiffs Jack Doe and Jill Doe*

49
**FIRST AMENDED COMPLAINT**

493618.1